MARCAM MORTGAGE CORPORATION, a Canadian corporation, and Wind River Village, Inc., a Wyoming corporation, Appellants (Plaintiffs),

v.

Thomas P. BLACK, Jr., XRT Properties, Ltd., a Wyoming limited partnership, Clarence G. Owens, Roberta L. Owens, and Title Guaranty Company of Wyoming, Inc., Appellees (Defendants).

No. 83–218.

Supreme Court of Wyoming.

July 23, 1984.

Todd S. Welch of Loomis, Lazear, Wilson & Pickett, Cheyenne, for appellants.

Walter C. Urbigkit, Jr., and Edwin H. Whitehead of Urbigkit, Whitehead, Zunker & Davidson, P.C., Cheyenne, for appellees.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROONEY, Chief Justice.

Appellants-plaintiffs appeal from a summary judgment entered against them in an action for breach of contract. Appellants contend that the breach occurred when appellees refused to accept payment under an amendment to an installment land contract, which payment was tendered after the payment date contained in the amendment but within the grace period for payments contained in the original contract.

We affirm.

On August 4, 1980, appellant Wind River Village, Inc. (hereinafter referred to as WRV), as purchaser, entered into a contract with appellees, as sellers, for the purchase and sale of real property in Fremont County. Appellant Marcam Mortgage Corporation is a majority shareholder in WRV. The contract consideration of $1,200,000.00 was to be paid as follows:

$225,000.00 paid upon execution of the contract.

$8,937.50 to be paid monthly for 23 months beginning August 20, 1980, representing interest only at 11 percent, plus deposit sufficient to amortize the assessed tax and insurance payments.

$9,556.10 to be paid monthly for 25 months beginning August 20, 1982, representing payment of interest at 11 percent and payment on principal, based on 25-year amortization basis, plus payment on assessed tax and insurance.

Remaining principal and interest at 11 percent to be paid on September 20, 1984.

WRV gave appellees a promissory note for $975,000.00, representing the balance due after the down payment.

Following are pertinent provisions of the contract with reference to default:

"A. In the event of default by Purchaser of the terms of this Contract, Sellers shall 'given [sic] written notice of such default to Purchaser *except for payments required on the promissory note,* and if the default is not corrected within

thirty (30) days of the notice, *except for fifteen (15) days after the due date on payment requirements,* the escrow agent shall redeliver the warranty deed to Sellers upon receipt of the affidavit from Sellers stating:

\* \* \* \* \* \*

"B. Upon receipt of such affidavit by the escrow agent, all interest of the Purchaser in and to the real property and improvements thereon, shall be forfeited, and the Sellers shall be entitled to all remedies available at law including suit for immediate possession and/or damages and/or *Sellers may retain all monies paid by Purchaser as partial liquidated damages, and that actual damages may be difficult or impossible to ascertain and upon obtaining possession of the property, Sellers may return the promissory note described above marked cancelled and all further duties and obligations of each party to the other pursuant to the terms of this Contract shall cease,* unless Sellers seek this remedy under specific performance.

"C. Events of default, the occurrence of *any one or more* of which shall provide the right of immediate possession of the premises, are as follows:

"(1) *Default and failure of Purchaser to pay the promissory note in the amount of $975,000.00, or any installment payment thereof, at due date of said installment, within a fifteen (15) day grace period in making such installment,* or at maturity of said note, whether on stated maturity or earlier on acceleration by the holder after default by maker in accordance with the tender and content of said note. \* \* \*

\* \* \* \* \* \*

"(9) *It shall be a default for Purchaser to fail to make the payments on the promissory note referred to herein,* or to fail to perform any of the other obligations contained in`this Installment Land Contract *in a timely manner. It is expressly acknowledged that time is of the essence in*

*the performance of the terms set forth herein."* (Emphasis added.)

Other default provisions contained in Paragraph 11 C were such as failure by purchaser to pay taxes and assessments against the property, failure to obtain fire insurance on it, creation of liens or encumbrances on it, making major alterations or additions to it without prior permission of sellers, etc.

The fact that WRV breached the contract by failing to make the required installment payments and the fact that appellees held the acceleration provisions of the contract in abeyance are not contested. In recognition thereof, the parties entered into an "amendment" to the contract on June 8, 1981. Following are pertinent provisions of such "amendment":

"WHEREAS, an initial Installment Land Contract (a copy of which is attached hereto and marked 'Attachment A' *and is hereby incorporated by this reference as if fully set forth herein*) was entered into between the Sellers and Purchaser on the 4th day of August, 1980 \* \* \*.

\* \* \* \* \* \*

"NOW, THEREFORE, for and in consideration of their mutual covenants and agreements herein contained the parties hereto agree *to amend and add to* the existing contract attached hereto as Attachment A, as follows:

"1. The Purchaser shall pay to the Sellers at such place as they direct the sum of One Hundred Thousand Dollars ($100,-000.00) *on or before September 1, 1981.*

"2. *Such One Hundred Thousand Dollar ($100,000.00) payment shall reduce and be applied against the outstanding principal* owed by the Purchaser to the Sellers in the amount of One Hundred Thousand Dollars ($100,000.00), and shall be evidenced by a Promissory Note signed by the Purchaser.

"3. In consideration for and upon the payment of said One Hundred Thousand Dollars ($100,000.00) by the Purchaser, the Sellers agree to waive any and all rights or claims which they have previously exercised under the Contract (At-

578

tachment A) to accelerate the payments owed under said contract and the accompanying note. PROVIDED HOWEVER, that *in the event said One Hundred Thousand Dollars ($100,000.00) is not paid on or before September 1, 1981,* all documents held by the Escrow Agent shall be returned to the Seller's [sic] attorney, Walter Urbigkit.

\* \* \* \* \* \*

"8. It is agreed by the parties hereto that the One Hundred Thousand Dollar ($100,000.00) payment mentioned in paragraph 1 above, will reduce the principal amount owed by the Purchaser to the Sellers and therefore, said reduction in principal will reduce the amount of interest payable on a monthly basis by the Purchaser to the Seller[s].

"9. In lieu of and because of this reduction in the interest payable, it is agreed that the payments made by the Purchaser to the Sellers shall be recomputed to illustrate the reduction caused by said One Hundred Thousand Dollar ($100,-000.00) payment and that an amortization schedule reflecting such re-computations shall be provided to Purchaser as soon as the same is available.

"10. *The Purchaser further agrees to bring current the monthly payments due under the original Contract and Note* (Attachments A and B) *as well as an amount owed for back taxes.* It is hereby agreed that this amount for the two (2) installment payments and back taxes is Twenty Four Thousand Three Hundred Sixty Two Dollars and Forty Five Cents ($24,362.45).

\* \* \* \* \* \*

"13. The acceleration of the amount due under the original contract (Attachment A) shall be held in abeyance for the 90

day period in which the Purchaser has to pay the Sellers the sum of One Hundred Thousand Dollars ($100,000.00) as set forth in paragraphs [sic] 1 above." (Emphasis added.)

The $100,000.00 payment was not made on September 1, 1981, as specified, but it was tendered on or about September 10, 1981. Appellees refused to accept it, declaring the contract to be in default and retaining all payments previously made as liquidated damages.

Appellants contend that WRV had not breached the contract inasmuch as the $100,000.00 payment was tendered within the 15-day grace period provided in the original contract for installment payments, and that, thus, appellees' refusal to accept that tendered amounted to a breach on their part. Further, they contend that, in any event, the retention by appellees of payments already made amounted to a penalty and was in excess of any damage suffered by appellees.

BREACH

The trial court properly found a failure on the part of WRV to make timely payments as required by the contract and the "amended" contract.[1] In *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* Wyo., 612 P.2d 463, 465 (1980), we said:

"Our basic purpose in construing or interpreting a contract is to determine the intention and understanding of the parties. *Fuchs v. Goe,* 62 Wyo. 134, 163 P.2d 783 (1945); *Shellhart v. Axford,* Wyo., 485 P.2d 1031 (1971); *Oregon Short Line Railroad Company v. Idaho Stockyards Company,* 12 Utah 2d 205, 364 P.2d 826 (1961). If the contract is in writing and the language is clear and

1. The trial court converted appellees' motion to dismiss under Rule 12(b) to a Rule 56 motion for summary judgment, noting that documents relative to the transaction were filed by all parties with their respective briefs and that no issue was raised relative to the validity of the documents. All parties were given reasonable opportunity to present additional material pertinent to consideration of a Rule 56 motion, and

an opportunity was afforded for additional argument. The court found that there was no genuine issue of a material fact and rendered a summary judgment as a matter of law upon interpretation of the original contract and of the "amended" contract, both of which were included among the documents presented outside of the pleadings.

unambiguous, the intention is to be secured from the words of the contract. *Pilcher v. Hamm*, Wyo., 351 P.2d 1041 (1960); *Fuchs v. Goe*, supra; *Hollabaugh v. Kolbet*, Wyo., 604 P.2d 1359 (1980); *Wyoming Bank and Trust Company v. Waugh*, Wyo., 606 P.2d 725 (1980). And the contract as a whole should be considered, with each part being read in light of all other parts. *Shepard v. Top Hat Land & Cattle Co.*, Wyo., 560 P.2d 730 (1977); *Rossi v. Percifield*, Wyo., 527 P.2d 819 (1974); *Shellhart v. Axford*, supra; *Quin Blair Enterprises, Inc. v. Julien Construction Company*, Wyo., 597 P.2d 945 (1979). The interpretation and construction is done by the court as a matter of law. *Hollabaugh v. Kolbet*, supra; *Bulis v. Wells*, Wyo., 565 P.2d 487 (1977); *Shepard v. Top Hat Land & Cattle Co.*, supra.

"If the contract is ambiguous, resort may be had to extrinsic evidence. *J.W. Denio Milling Co. v. Malin*, 25 Wyo. 143, 165 P. 1113 (1917); *Kilbourne-Park Corporation v. Buckingham*, Wyo., 404 P.2d 244 (1965). An ambiguous contract 'is an agreement which is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present.' *Bulis v. Wells*, supra, 565 P.2d at 490. Ambiguity justifying extraneous evidence is not generated by the subsequent disagreement of the parties concerning its meaning. *Homestake-Sapin Partners v. United States*, 10th Cir. 1967, 375 F.2d 507.

"Appellee contends this contract to be clear and unambiguous. The trial court so found, and appellant does not contend otherwise. Whether ambiguity exists is a question of law. *Redding Foods, Inc. v. Berry*, Tex.Civ.App., 361 S.W.2d 467 (1962); *Bosler v. Coble*, 14 Wyo. 423, 84 P. 895 (1906). We are, therefore, at liberty to make a determination as to the existence of ambiguity whether or not the parties here agree thereto one way or the other, and whether or not the trial court has reached a conclusion thereon one way or the other."

Since the "whereas clause" of the "amended" contract, supra, incorporates the original contract by reference, the two contracts must be construed as one agreement, *Busch Development, Inc. v. City of Cheyenne*, Wyo., 645 P.2d 65, 70 (1982), and the agreement must be construed as a whole, *Shepard v. Top Hat Land & Cattle Co.*, Wyo., 560 P.2d 730, 732 (1977).

Without consideration of the $100,000.00 payment required by the "amended" contract, the plain and unambiguous language of the "amended" contract required WRV to "bring current the monthly payments due under the original Contract and Note * * * as well as an amount owed for back taxes" (see Paragraph 10 of "amended" contract, supra). There is nothing in the record[2] to reflect that such was done before September 1, 1981, or within 15 days thereafter or at any time.

With reference to the application of the 15-day grace period to the $100,000.00 payment required by the "amended" contract, the plain and unambiguous language of the original contract limited such grace period to the "installment" payments. The $100,000.00 payment is a lump sum payment on the principal and is not an installment payment on the note. Paragraph A of the original contract excepts from the notice requirement defaults in payments "on the promissory note" (see supra). The provision thereof relied upon by appellants (Paragraph C(1), supra) refers to the installment payments on the note and defines a default as failure to pay any installment "at due date of said installment, within a fifteen (15) day grace period in making such installment." The 15-day grace period was not made applicable to the initial $225,000.00 as payment, or to the balloon payment due on September 20, 1984. The $100,000.00 payment specified in the

---

**2.** Appellants' memorandum in opposition to the motion to dismiss refers to the tendered payment to have been only of the $100,000.00.

"amended" contract was to be paid on or before September 1, 1981 (see Paragraph 1, supra), with the direction that if not so paid, the escrow documents *"shall* be returned" (emphasis added) to appellees' attorney (see Paragraph 3, supra).

■ The foregoing would be determinative as to the intent of the parties should it be necessary to ascertain such intent because of ambiguity. In their reply brief, appellants acknowledge that "the parties intended to allow every provision of the original contract *not specifically changed by the amended contract* to control." (Emphasis added.) One of the specific changes was a requirement of payment of $100,000.00 by September 1, 1981.

In their brief appellants acknowledge the usual purpose of a grace period. They say:

"There was a very definite purpose for putting in the fifteen (15) day grace period because of problems existing with payments being received even though payments have been properly made."

But there is no contention that the tender of the $100,000.00 payment was made before September 1, 1981, with the receipt being delayed because of mail problems or for similar reasons. The payment was simply not made at the time intended by the parties, which time was expressed in plain and unambiguous language in the "amended" contract. Any grace period set forth in the original contract which was applicable to the "amended" contract by virtue of the "incorporation by reference" language pertained to installment payments. The $100,-000.00 was not an installment payment. In any event, the delinquent monthly payments and assessment owed for back taxes were not "made current" as required by the "amended" contract.

WRV had breached the agreement, and appellees were entitled to receive the escrow documents pursuant to Paragraphs A and B of the original contract and Paragraph 3 of the "amended" contract. This being so, appellants' action for breach of the contract by appellees must fail.

## DAMAGES

Appellants contend that the retention by appellees of the $225,000.00 down payment amounts to a penalty and bears no reasonable relationship to the amount of actual damages. Thus, they argue, an issue of material fact existed as to the amount of actual damages suffered by appellees, and the summary judgment was improper.

■ We do not favor forfeitures. We said in *Ray v. Electrical Products Consolidated,* Wyo., 390 P.2d 607, 609 (1964):

"We think there can be no quarrel with the rule that a provision in a contract will be construed as a penalty or forfeiture and hence unenforceable if it bears no reasonable relationship to the amount of actual damages. * * * "

But we have also said:

"The disposition of this case is controlled by *Younglove v. Graham & Hill,* Wyo., 526 P.2d 689 (1974), upon which Barker Brothers Company relies. In that opinion this court recognized the general proposition that forfeitures are not favored, as suggested by the Johnsons. The court concluded, however, that the general concept with respect to abhorrence of forfeitures does not justify a court of equity in disregarding and setting aside a valid contractual obligation of the parties in the absence of some particular equitable reason. * * * "

*Barker v. Johnson,* Wyo., 591 P.2d 886, 889 (1979).

And:

"If there is an express contract in connection with the damages, that contract, of course, must govern. * * * " *Studer v. Rasmussen,* 80 Wyo. 465, 344 P.2d 990, 998 (1959).

■ Whether or not a provision for liquidated damages amounts to a penalty depends upon the circumstances of each individual case, and the question is resolved as a matter of law.

" * * * It is virtually the unanimous rule of all jurisdictions that whether a stipulation is for liquidated damages or a penalty is a question of law for the court.

* * * " *Ruckelshaus v. Broward County School Board*, 494 F.2d 1164, 1165 (5th Cir.1974).

See *Babler Bros., Inc. v. Hebener*, 267 Or. 414, 517 P.2d 653 (1973); *Abel Construction Company v. School District of Seward*, 188 Neb. 205, 195 N.W.2d 744 (1972); and *Dave Gustafson & Co. v. State*, 83 S.D. 160, 156 N.W.2d 185 (1968).

"It is frequently stated that whether a provision is for liquidated damages or a penalty is to be determined by a construction of the contract. The question is to be decided upon the terms and inherent circumstances of each particular contract, judged of as at the time it was made, and not at the time of the breach, except when the court compares the reasonableness of the stipulated sum with actual damages. It will be considered in connection with the nature and subject matter of the contract, the condition of the contracting parties, and the surrounding circumstances, and the court will also consider that the parties, being informed as to the facts and circumstances, are better able than anyone else to determine what would be a fair and reasonable compensation for a breach." 22 Am.Jur.2d Damages § 223, p. 310 (1965).

"As distinguished from liquidated damages, a 'penalty,' in the sense in which that term is used in this article, is a sum inserted in a contract, not as the measure of compensation for its breach, but rather as a punishment for default, or by way of security for actual damages which may be sustained by reason of nonperformance, and it involves the idea of punishment. A penalty is an agreement to pay a stipulated sum on breach of contract, irrespective of the damage sustained. Its essence is a payment of money stipulated as in terrorem of the offending party, while the essence of liquidated damages is a genuine covenant-

ed pre-estimate of damages. The parties are bound by a stipulation for liquidated damages. The amount is fixed and is not subject to change; however, if the stipulated sum is deemed to be a penalty, it is not enforceable and the nondefaulting party is left to the recovery of such actual damages as he can prove." 22 Am.Jur.2d Damages § 213, pp. 298–299 (1965).

Two factors are listed in § 356, Restatement of Contracts 2d, p. 157 (1981) for determination of whether the amount fixed for damages in the contract is proper liquidated damages or whether it is a penalty:

"(1) Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. * * * "[3]

The Comment thereto recites in part as follows:

" * * * The first factor is the anticipated or actual loss caused by the breach. The amount fixed is reasonable to the extent that it approximates the actual loss that has resulted from the particular breach, even though it may not approximate the loss that might have been anticipated under other possible breaches. * * * Furthermore, the amount fixed is reasonable to the extent that it approximates the loss anticipated at the time of the making of the contract, even though it may not approximate the actual loss. * * * The second factor is the difficulty of proof of loss. The greater the difficulty either of proving that loss has occurred or of establishing its amount with the requisite certainty * * *, the easier it is to show that the amount fixed is reasonable. To the extent that there is uncertainty as to the harm, the estimate of the court or jury may not accord with the

**3.** Wyoming public policy in this respect is evidenced by § 34–21–297(a), W.S.1977 (Uniform Commercial Code):

"(a) Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the

anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty."

principle of compensation any more than does the advance estimate of the parties. A determination whether the amount fixed is a penalty turns on a combination of these two factors. If the difficulty of proof of loss is great, considerable latitude is allowed in the approximation of anticipated or actual harm. If, on the other hand, the difficulty of proof of loss is slight, less latitude is allowed in that approximation. If, to take an extreme case, it is clear that no loss at all has occurred, a provision fixing a substantial sum as damages is unenforceable. * * * "

Turning, then, to the provision for liquidated damages in the contract before us, the parties recognized that "actual damages may be difficult or impossible to ascertain." (See Paragraph B, supra.) It may have been possible to ascertain the loss of rents during the time appellants were in possession, but it would have been difficult at that time to ascertain the condition in which the property was maintained. Indeed, the language of the "amended" contract indicates some problem in this respect. Paragraphs 5, 6 and 7 read:

"5. The Purchaser agrees to take whatever action is necessary to place the property described above in the same condition or as similar thereto as possible, as soon as is reasonably possible, as said property was in when it was purchased originally by the Purchaser on or about the 4th day of August, 1980.

"6. The Purchaser agrees to obtain from any person or entity to whom the Purchaser sells said property an agreement to maintain said property in the same condition it was in when it was purchased by Wind River Village, Inc., normal wear and tear excepted.

"7. Purchaser agrees to obtain and keep a competent resident property manager on the premises to care for and keep up the premises as well as collect rents. Sellers shall approve of such manager, PROVIDED HOWERVER [sic], that such approval shall not be unreasonably withheld."

The contract reflects the existence of obligations which were secured by the property. The result of WRV's failure to perform under such obligations as a result of default would be difficult to determine at the time of the contract.

The parties obviously recognized these and other undetermined factors when they expressed their intention in the agreement that liquidated damages would result from a breach.

"* * * However, as a general rule, where the question is whether a contract provides for liquidated damages or for a penalty, the burden of establishing facts showing that the intention of the parties was other than appears from the face of the contract is on the party claiming such facts." 25A C.J.S. Damages § 144, p. 24 (1966).

Appellants did not suggest, by affidavit or otherwise, that the liquidated damage amount was unreasonable in light of the anticipated loss or that actual damages were subject to proof without difficulty.

In this instance, the fixing of liquidated damages at the amount already paid on the contract is a reasonable method of anticipating the actual loss to be covered by a default on the part of WRV inasmuch as the payments to be made were only sufficient to cover the interest on the mortgage loans. Loss of rentals to handle payments on the principal and to return a profit increased each month, making it necessary to provide for liquidated damages on default to increase with each payment. Of course, if the agreement required the consideration to be paid in monthly payments which were to continue until full payment was accomplished and a default occurred in the last few months, the retention of all payments made and a return of escrow documents would be a forfeiture not allowed by us. In this instance, however, the real consideration for the transaction was to be in the final balloon payment. Intermediate payments were only to pay interest on mortgage debts. The $225,-000.00 down payment could well not be enough to compensate for the potential

property damage, or for the loss of a sale to a responsible buyer during the period appellants had the property, i.e., it is similar to an option payment to tie up the property until the transaction was completed with the balloon payment.

It is to be noted that the liquidated damages in this case are 18.75 percent of the purchase price, whereas they were 29 percent thereof in *Younglove v. Graham & Hill*, supra, wherein we held the retention not to be a penalty.

Appellants did not indicate to the trial court the potential of any evidence to reflect that the agreement for liquidated damages was unreasonable in the light of anticipated or actual loss covered by the breach and that the proof of actual losses would not be difficult. The summary judgment was proper.

Affirmed.