X.L.O. CONCRETE CORP., Plaintiff, v JOHN T. BRADY AND COMPANY et al., Appellants-Respondents.

JOHN T. BRADY AND COMPANY, Third-Party Plaintiff-Appellant-Respondent, v NEW YORK UNIVERSITY, Third-Party Defendant-Respondent-Appellant, et al., Third-Party Defendant.

First Department, December 6, 1984

**APPEARANCES OF COUNSEL**

*Frederick Cohen* of counsel (*Andrea Popik Taber* and *Charles Fastenberg* with him on the brief; *Ross & Cohen,* attorneys), for

appellants-respondents and third-party plaintiff-appellant-respondent.

*Robert P. Walton* of counsel (*S. Andrew Schaffer,* attorney), for third-party defendant-respondent-appellant.

### OPINION OF THE COURT

SULLIVAN, J. P.

■ This appeal presents the question of whether a construction contract clause providing recompense to the owner at a stipulated amount per day for the contractor's delay in completing the project is vitiated by the owner's own culpability in causing at least some of the delay, so that the owner is free to seek actual delay damages in excess of the sum stipulated. We hold that it is not.

On or about June 15, 1979, John T. Brady and Company, a general contractor, entered into an agreement with New York University (N.Y.U.) to furnish, for the sum of $14,993,000, all of the work, labor and materials required for the construction of a new residence hall for students attending the university's School of Law. In accordance with the contract's requirements, Federal Insurance Company posted a performance bond guaranteeing full performance by Brady of its contractual obligations. The contract, which provided for substantial completion of the work on or before June 15, 1981, contained a liquidated damage clause entitling N.Y.U. to deduct from any amounts otherwise due Brady $2,000 per day for each day beyond June 15, 1981 that the work remained uncompleted.

The June 15, 1981 completion date was critical to N.Y.U., which was concerned that the residence hall be ready to house the 630 or more students who were scheduled to arrive for the beginning of the fall semester. Construction on the project began on or about June 25, 1979. The date of its completion is in issue. While Brady contends that it completed construction in or about June, 1981, N.Y.U. claims that the residence hall had not been substantially completed when the students arrived in early September, 1981. In any event, on March 6, 1981, plaintiff X.L.O. Concrete Corp., a subcontractor engaged by Brady to perform a portion of the concrete work, commenced this action against Brady (and against Federal on its bond), seeking a balance allegedly due on the adjusted subcontract price, as well as the value of the labor furnished and material supplied in performing extra and change order work, and the additional costs incurred by reason of delay caused by Brady's interference with the performance and completion of its subcontract. Brady

thereafter impleaded N.Y.U. and its architect, seeking, *inter alia,* indemnification for any recovery by X.L.O. against it on the ground that any damage sustained by X.L.O. was caused by the wrongful acts and omissions of N.Y.U. and its architect.

N.Y.U.'s answer to the third-party complaint contained a seventh affirmative defense which, by way of a counterclaim against Brady and cross claim against Federal, seeks actual and consequential damages caused by, *inter alia,* Brady's alleged delay in its performance of the contract. The eighth affirmative defense included a counterclaim against Brady which seeks liquidated damages, "in an amount not as yet determined but which it is believed will exceed the sum of $50,000," pursuant to contract provision therefor at the rate of $2,000 per day for each day the work was allegedly delayed by Brady beyond June 15, 1981. Brady and Federal moved for partial summary judgment dismissing N.Y.U.'s claim for actual and consequential damages asserted in the seventh affirmative defense, by way of counterclaim and cross claim against Brady and Federal, respectively. In so moving, Brady and Federal argued that N.Y.U. is precluded from asserting a delay damage claim against them since the contract's liquidated damage clause provides the sole and exclusive remedy for any delay damage sustained by it. Special Term denied the motion, finding triable issues of fact. We reverse and strike from the counterclaim and cross claim asserted in the seventh affirmative defense any request for actual and consequential delay damages.

Parties to a contract may provide for anticipatory damages in the event of failure to complete performance within the time specified, as long as such agreement is neither unconscionable nor contrary to public policy. (*Mosler Safe Co. v Maiden Lane Safe Deposit Co.,* 199 NY 479, 485.) Absent statutory authority, the imposition of penalties or forfeitures contravenes public policy. (*City of Rye v Public Serv. Mut. Ins. Co.,* 34 NY2d 470, 472-473.) If the amount stipulated in the liquidated damage clause is manifestly disproportionate to the actual damage, then its purpose is not to "provide fair compensation but to secure performance by the compulsion of the very disproportion." (*Truck Rent-A-Center v Puritan Farms 2nd,* 41 NY2d 420, 424.) Thus, the rule has evolved that when the damages flowing from the breach of a contract are easily ascertainable, or the damages fixed are plainly disproportionate to the injury, the stipulated sum will be treated as a penalty (*Mosler Safe Co. v Maiden Lane Safe Deposit Co., supra,* p 485), but, where they are uncertain, or difficult, if not incapable, of ascertainment, then a provision liquidating them in advance of loss will be enforced, if the

amount liquidated bears a reasonable proportion to the probable loss. (*City of Rye v Public Serv. Mut. Ins. Co., supra,* p 473; *Wirth & Hamid Fair Booking v Wirth,* 265 NY 214, 223.) Whether the sum stipulated represents a liquidation of the anticipated damages or a penalty is a question of law, with due consideration for the nature of the contract and the attendant circumstances. (*Mosler Safe Co. v Maiden Lane Safe Deposit Co., supra,* p 485.) Moreover, the agreement should be interpreted as of the date of its execution, not the date of its breach. (See *Seidlitz v Auerbach,* 230 NY 167, 172.)

In light of these principles, we conclude that the liquidated damage clause is valid. It should be noted that N.Y.U. has not challenged, nor could it, the validity of the clause on the ground that the amount specified bears no rational relationship to the amount of actual delay damages which it reasonably anticipated at the time the contract was executed. In any event, N.Y.U., which prepared and drafted the contract and imposed both the liquidated damage provision and the $2,000 per day figure, could hardly argue that the provision constituted a penalty designed to induce performance rather than a means of providing "just compensation for loss" (*Truck Rent-A-Center v Puritan Farms 2nd, supra,* p 424). Nor can N.Y.U., which, alone, was in the best position to estimate the harm to be caused by delay, and the amount of compensation needed to redress that harm, now argue that the liquidated damage clause is invalid because it does not adequately compensate for the alleged actual delay damages.

The rule is well established that a valid contractual provision for liquidated damages controls the rights of the parties in the event of a breach, notwithstanding that the stipulated sum may be less than the actual damages allegedly sustained by the injured party. (*General Supply & Constr. Co. v Goelet,* 241 NY 28, 37-38; *Estate of Richter v Novo Corp.,* 43 AD2d 1; *Sulyok v Penzintezeti Kozpont Budapest,* 279 App Div 528.) As early as 1902, the Court of Appeals recognized that "when the parties by their contract provide for the consequences of a breach, lay down a rule to admeasure the damages and agree when they are to be paid, the remedy thus provided must be exclusively followed." (*McCready v Lindenborn,* 172 NY 400, 409.) Thus, where the contract contains a legally enforceable provision for the payment of stipulated damages to a party for a breach, since the provision's sole purpose is to prevent, in the event of breach, any question as to the amount that shall be recovered therefor, actual damages are not at issue and the only question is as to the

breach. (*City of New York v Seely-Taylor Co.,* 149 App Div 98, 103, affd 208 NY 548.) Hence, even though its actual delay damages may, in fact, be greater than $2,000 per day, N.Y.U. is, as a matter of law, limited to the sum for which it bargained.

In seeking to avoid the limitation of the liquidated damage clause for which it bargained, N.Y.U., citing *Mosler (supra)*, argues that where both the owner and contractor are ultimately found to have contributed to a delay in completing a project, the injured party is relegated to the remedy of an action at law in which it may recover its actual loss for the contractor's delay.

The apparent rationale for the holding to that effect in *Mosler (supra)* was the court's view that inasmuch as liquidated damages cannot be apportioned, where, by virtue of the mutual fault of the parties, the date fixed by the contract for completion has passed, in the absence of some provision under which another date could be substituted, the obligation to pay liquidated damages is obviated. (*Mosler Safe Co. v Maiden Lane Safe Deposit Co.,* 199 NY 479, 487-489, *supra.*) It is noteworthy, however, that the court specifically exempted from its holding those instances where the contract contained a provision by which the date from which liquidated damages were to run could be preserved: "It was competent for the parties, anticipating mutations of mind and of conditions, to have provided against a forfeiture of the right to liquidated damages by, further, agreeing that the architect was empowered to certify an extension of the time for completion, if the contractor was delayed in his work in certain specified events, or by causes specified. With such a provision, the obligation to pay liquidated damages might be preserved and its commencement deferred to a substituted date" (*supra,* at pp 486-487).

Here, the contract between Brady and N.Y.U. expressly and unambiguously gave the architect the authority to certify extensions of time should the contractor be delayed in the progress of the work by, *inter alia,* any act or neglect of the owner or the architect. It is also undisputed that Brady, pursuant to the contract, submitted requests for extensions of time. Thus, since the contract contained a mechanism to preserve by extension the date fixed by the parties for completion, the obligation to pay liquidated damages could have been preserved and its commencement deferred to a new date to be determined by crediting the contractor with those delay days which were attributable to the owner. (Cf. *Mosler Safe Co. v Maiden Lane Safe Deposit Co., supra,* at pp 487, 489.)

Moreover, as the court in *Mosler* recognized, while a liquidated damage clause does not have "the harshness of a penalty, it is, nevertheless, in its nature, such that its enforcement, where the party claiming the right to enforce has, in part, been the cause of delay, would be unjust" (*supra*, at p 486). Thus, *Mosler* was clearly addressing a situation where the liquidated damages sought by the owner exceeded its actual delay damages and the court was concerned with the injustice of permitting the owner to reap the benefit of the liquidated damage clause. Here, the converse is true. N.Y.U.'s actual delay damages, alleged to be over $390,000, greatly exceed the amount of liquidated damages claimed, said to be over $50,000. Thus, if N.Y.U. is permitted to assert its own culpability in delaying completion of the project to vitiate the bargained-for liquidated damage clause, and to recover its actual delay damages, it will have profited from its own wrong. Moreover, under such reasoning, the owner who strictly complies with his contractual obligations and does not cause delay would be limited to liquidated damages, even though his actual delay damages greatly exceed the stipulated sum. Such a result is as inequitable as it is illogical.

A provision for liquidated damages is beneficial both to the owner, who is relieved of the difficult, if not impossible, calculation of damage, item by item, and to the contractor, who is insulated against a potentially devastating monetary claim in the event of a delay in completion of the project. Thus, public policy is served by the implementation of such clauses. Since the liquidated damage clause contained in the contract between Brady and N.Y.U. is clearly enforceable, and since a valid provision for liquidated damages fixes the amount recoverable at the sum stipulated, irrespective of actual damage, N.Y.U.'s claims for actual and consequential delay damages must be dismissed. Of course, in the absence of a contractual provision by which the date for completion of the particular project may be extended, a party otherwise entitled to liquidated delay damages is limited to his actual damages, not to exceed the sum stipulated, where he himself is at fault in contributing to the delay. (*Mosler Safe Co. v Maiden Lane Safe Deposit Co.*, 199 NY 479, *supra*.) But, as already noted, that is not the case here.

We are limiting our determination with respect to the counterclaim and cross claim contained in the seventh affirmative defense to a striking of any claim for delay damages only since the allegations therein can be read to ask for more than just delay damage.

█ In a cross appeal, N.Y.U. argues that Special Term erred in denying its cross motion for a default judgment on its counter-

claim for the delay damage sought in paragraphs 23 and 24 of its answer, based on Brady's neglect over one and one-half years to interpose a reply to its counterclaim, and in permitting Brady to reply. Since Brady carried its burden of showing both excusable default and merit, however, Special Term properly refused to grant a default judgment. Although N.Y.U. also appealed from the denial of its cross motion to dismiss the third and fourth causes of action in the third-party complaint, it has apparently abandoned that aspect of its appeal.

Accordingly, the order of the Supreme Court, New York County (D. Edwards, Jr., J.), entered May 9, 1983, which, *inter alia,* denied the motion of defendant and third-party plaintiff Brady and defendant Federal for partial summary judgment dismissing the third-party defendant N.Y.U.'s counterclaim against Brady and cross claim against Federal as set forth in paragraphs 23 and 24 of its answer, should be modified, on the law, without costs or disbursements, to grant the motion to the extent of striking from the said counterclaim and cross claim any claim for actual and consequential delay damages and, except as thus modified, affirmed.

Ross, CARRO, BLOOM and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on May 9, 1983, unanimously modified, on the law, without costs and without disbursements, to grant the motion to the extent of striking from the said counterclaim and cross claim any claim for actual and consequential delay damages and, except as thus modified, affirmed.