Leslie Willner, Appellant, v Peter Willner, Respondent.

Second Department, March 6, 1989

APPEARANCES OF COUNSEL

*O'Rourke & Degen (Ronald D. Degen* of counsel), for appellant.

*Paul Morgenstern* for respondent.

**OPINION OF THE COURT**

SPATT, J.

In a matrimonial action in which the parties were divorced by judgment dated November 26, 1980, the defendant husband moved and the plaintiff wife cross-moved, *inter alia,* for modification of the husband's alimony and child support obligations. The parties, in settlement of that controversy, stipulated that, in the event of a default of seven days after written notice on "any payment of arrears or child support", the husband shall pay an additional sum of $110 per week for an extended period of time. A judgment setting forth the terms of that stipulation was entered on April 6, 1984. This is a classic case of a purported "liquidated damages" clause. In reality, it constitutes a punitive measure which, as a matter of law, is an unenforceable penalty. Therefore, the judgment dated May 22, 1987, which declared that provision of the stipulation and the corresponding provision of the judgment entered April 6, 1984, to be unenforceable, is affirmed insofar as appealed from.

I

Pursuant to the judgment of divorce, the wife was awarded custody of the three infant issue, and the husband was to pay alimony and child support. Following a motion by the husband for downward modification of his alimony obligation and a cross motion by the wife, *inter alia,* for an upward modification of child support, on February 29, 1984, the parties entered into a stipulation agreeing to reduce arrears and increase child support. The wife also waived "maintenance" as of March 2, 1984.

The stipulation contained the clause at issue on this appeal, to wit:

"(5) If the defendant defaults in any payment of arrears or child support, the plaintiff shall give written notice to the defendant by either certified mail, return receipt requested, or in person. Thereafter the defendant shall have seven days to cure, that is, seven days after his receipt of this written notification or ten days after the delivery to him of this notification, should he fail or refuse to accept the written notification. This notification can be made to him at either his home or his office address.

"(6) *If the defendant does not cure the default, maintenance shall be instituted at $110 per week retroactive to March 2, 1984, payable immediately whether or not the plaintiff has remarried in the interim. If she has remarried, it shall be construed as child support from the date of the marriage [forward]*" (emphasis supplied).

In August 1986 the wife, claiming that the husband's persistent late payments had triggered that clause of the stipulation, moved, *inter alia,* for leave to enter a judgment for arrears. The wife contended that, as a result of the husband's untimeliness in making payments, she was entitled to additional payments of $110 per week for the period from March 2, 1984, to September 15, 1986, the date her motion was returnable. By the time the hearing on the motions was concluded in March 1987 the liquidated damages had increased to the sum of $17,490 (159 weeks at $110 per week). The validity of that clause was squarely presented to the court when the husband cross-moved to vacate it on the ground that it constituted a "penalty" against public policy.

The wife contended that when she agreed to the terms of the stipulation, she waived a substantial sum of arrears estimated at $4,000 and, in addition, she waived "maintenance" in order to obtain liquidated "damages" which would be payable in the event the husband defaulted in any payment. The wife's position was that she gave up her right to alimony and substantial arrears in an effort to insure that the husband would make timely payments. However, the record reveals that, in fact, the wife gave up very little in arrears due to her when she received the benefit of that clause. At the hearing, she conceded that the so-called substantial arrears waived by the stipulation really consisted of bills for piano lessons and medical services in the sum of approximately $1,500, as follows:

"[The husband's attorney]: This is a recent affidavit dated the 9th of January, 1987 *[sic]*, Your Honor.

"I'd like to know what this $4,000.00 is that she has sworn that she gave up in consideration of the judgment dated April 4, 1984.

"[The wife]: I gave up medical expenses which had been incurred for our children. I paid them.

"Q In what amount * * *?

"A I don't have the exact figures in front of me. I believe it was $400.00 for the oral surgeon for my daughters. $200.00

each. $150.00, I believe, perhaps more, for orthopedist. I think it was $400.00 for orthodontia work. I gave up the $880.00 in piano lessons and I gave up—I don't recall right now. * * *

"Q Mrs. Schwarz [the wife], that comes to about fifteen hundred dollars. Where is the rest of the $4,000.00 that you swore that you had given up?

"A I gave up—I allowed him the attorneys fees * * *.

"Q Isn't it true, Mrs. Schwarz, Mr. Willner was only supposed to pay extraordinary medical expenses which were incurred by the children?

"A Yes. * * *

"Q What makes you say that Mr. Willner should have been responsible for the piano lessons of $880.00?

"A Because as an honorable man when you make a verbal agreement you uphold it."

In addition, the wife contended that she also gave up alimony of $140 per week in order to obtain the coveted liquidated "damages" clause. This argument is also of doubtful validity. At the time the wife waived alimony, her total child support was increased by $30 per week. Also, she was unemployed at the time she was awarded alimony while at the time of the execution of the stipulation, she was gainfully employed by the Board of Education of the City of New York as a speech teacher. Given the substantial change in her employment and greatly increased income, in all probability her alimony would have been substantially reduced or eliminated, even in the absence of the stipulation. Further, the wife remarried on September 29, 1985, and her alimony would have terminated on that date, even had she not previously chosen to give up that benefit.

At the hearing, it was established that, although the husband was a persistent late payer, seven years after their divorce, the actual arrears was the sum of $475. In addition, the wife conceded that she was able to make all her mortgage payments, pay all her obligations, and did not have to incur any indebtedness, despite the husband's late payments.

The Supreme Court, Queens County, held that the clause in issue in the February 29, 1984 stipulation was a penalty and unenforceable. We agree.

## II

It is well settled that parties to an agreement may provide

for the payment of liquidated damages upon its breach, and such damages will be upheld if (1) the amount fixed is a reasonable measure of the probable actual loss in the event of breach, and (2) the actual loss suffered is difficult to determine precisely *(see, Truck Rent-A-Center v Puritan Farms 2nd,* 41 NY2d 420; *City of Rye v Public Serv. Mut. Ins. Co.,* 34 NY2d 470, 473; *see also, Lavington v Edgell,* 127 AD2d 155). However, if the liquidated damages do not bear a reasonable proportion to the loss actually sustained by a breach, they will constitute an unenforceable penalty *(Consolidated Rail Corp. v MASP Equip. Corp.,* 67 NY2d 35; *Wirth & Hamid Fair Booking v Wirth,* 265 NY 214; *National Telecanvass Assocs. v Smith,* 98 AD2d 796). The rule was clearly stated in *X.L.O. Concrete Corp. v Brady & Co.* (104 AD2d 181, 183-184, *affd* 66 NY2d 970), as follows: "If the amount stipulated in the liquidated damage clause is manifestly disproportionate to the actual damage, then its purpose is not to 'provide fair compensation but to secure performance by the compulsion of the very disproportion.' * * * Thus, the rule has evolved that when the damages flowing from the breach of a contract are easily ascertainable, or the damages fixed are plainly disproportionate to the injury, the stipulated sum will be treated as a penalty * * * but, where they are uncertain, or difficult, if not incapable, of ascertainment, then a provision liquidating them in advance of loss will be enforced, if the amount liquidated bears a reasonable proportion to the probable loss. * * * Whether the sum stipulated represents a liquidation of the anticipated damages or a penalty is a question of law, with due consideration for the nature of the contract and the attendant circumstances. * * * Moreover, the agreement should be interpreted as of the date of its execution, not the date of its breach".

Liquidated damages clauses are suited to factual situations where there is uncertainty concerning the measure of damages *(see, Morgan Servs. v Lavan Corp.,* 59 NY2d 796, 797 [the liquidated damages clause in a contract for the rental of uniforms held valid in an action for loss of future profits in that it "bore a reasonable relation to the amount of probable actual harm for breach of that contract, there being uncertainty concerning the re-rental or sale value of the uniforms"]).

However, where there is doubt as to whether a provision constitutes an unenforceable penalty or a proper liquidated damage clause, it should be resolved in favor of a construction

which holds the provision to be a penalty *(City of New York v Brooklyn & Manhattan Ferry Co.,* 238 NY 52, 56; *Vernitron Corp. v CF 48 Assocs.,* 104 AD2d 409; *National Telecanvass Assocs. v Smith,* 98 AD2d 796, *supra; see also, Schiffman v Deluxe Caterers,* 100 AD2d 846).

Applying the principles of "liquidated damages" law to the facts of this case, it is clear that the stipulated loss which would occur as a result of a single default by the husband in any payment, such as a short delay in the payment of child support, would be clearly disproportionate to the amount of the actual damages. Moreover, the actual loss attributable to these late payments of support is readily ascertainable and is, therefore, an inappropriate area for the application of liquidated damages.

For the purpose of determining the validity of the liquidated damages clause, the weekly support payments in this case are analogous to monthly rental payments under a lease. In *Gilad Realty Corp. v Ripley Pitkin Ave.* (48 AD2d 683), the parties entered into an agreement to extend a long-term lease and reduce the monthly payments. Upon the tenant's default, under a "liquidated damages" clause in the extension agreement, the landlord sought to recover the difference between the original and the reduced rent for the entire term of the extension, a period of 225 months at $375 per month. This court invalidated the clause as a penalty, holding: "We cannot agree with plaintiff. To do so would give it the benefit of a penal forfeiture. As was stated in *Manhattan Syndicate v Ryan* (14 AD2d 323, 327), 'it is a relevant general rule that a failure to pay a sum of money due will rarely, if ever, justify a further sum, in excess of interest, to be paid by way of liquidated damages. On the contrary, such a requirement is likely to be condemned as a penal forfeiture which the law will not recognize'. Here, the damages claimed by plaintiff and awarded by Special Term (in excess of $91,000) are clearly disproportionate to the actual loss resulting from the nonpayment of several months' rent. The amount of that loss is readily ascertainable and, despite the finding by Special Term that there was no ambiguity as to the intent of the parties, that is all that should be awarded" *(Gilad Realty Corp. v Ripley Pitkin Ave., supra,* at 683-684).

Similarly, in *Vernitron Corp. v CF 48 Assocs. (supra),* the "liquidated damages" clause in the lease provided for additional damages in a sum equivalent to one year's rent in the event of a default under the terms of the lease, including

nonpayment of rent. This court struck down the patent attempt to penalize a defaulting tenant, as follows: "In the case at bar, it is clear that the loss which might occur as a result of certain minor defaults under the lease (i.e., for a two-day delay in payment of rent) would be clearly disproportionate to the amount of liquidated damages. Moreover, the loss attributable to certain defaults such as late payment of rent is clearly readily ascertainable and is inappropriate for application of liquidated damages. In conclusion, we find that on its face the clause in question was a penalty rather than a legitimate liquidated damages clause and unenforceable as a matter of law" (*Vernitron Corp. v CF 48 Assocs., supra,* at 410).

## III

In the instant case, the purported liquidated damages would require the husband to pay "maintenance" to the wife in the amount of $5,720 per year in addition to the child support agreed upon, retroactive to March 2, 1984, and continuing into the future until either the wife or husband dies or, if the wife remarries, until the youngest child reaches majority. As noted above, by the express terms of this clause, the additional "maintenance" payments of $5,720 per year would be continued even if the wife remarries, albeit nominally disguised in the form of child support. As the youngest child will reach the age of majority on August 28, 1993, a single untimely payment of child support would trigger a "liquidated damages" payment of nearly $54,750. Such "liquidated damages" are clearly out of all proportion to the actual damages which could be caused by the husband's breach, namely, the accrual of arrears which are readily ascertainable and can be precisely fixed. The wife has demonstrated no damage as a result of a breach caused by late payments which would render the enforcement of this penalty anything less than an unconscionable windfall.

Without enforcement of the provision, the parties are left in relatively equal positions: the husband has paid and must continue to pay the required support and, if not, as is the case with other litigants in her position, the wife may obtain a judgment for any arrears together with interest and costs. On the other hand, enforcing the provision would improperly punish the husband and award the wife an undeserved gain. Without having demonstrated injury and having received virtually all the money to which she is entitled, she would

receive back payments of alimony, which the parties had determined in February 1984 were not actually necessary for her support, and would continue to receive them despite the fact that her remarriage would have made her ineligible for them according to the terms of the judgment of divorce. Such a result is inherently inequitable and will not be sanctioned.

In sum, we find that the clause at issue in the stipulation of February 29, 1984, is a penalty rather than a liquidated damage clause and is unenforceable as a matter of law.

We also find that the award of attorneys' fees to the plaintiff in the amount fixed was not an improvident exercise of discretion.

Accordingly, the judgment of May 22, 1987 should be affirmed insofar as appealed from.

THOMPSON, J. P., RUBIN and BALLETTA, JJ., concur.

Ordered that the judgment is affirmed, insofar as appealed from, with costs.