Kent JESSEN, Appellant (Defendant),

v.

Tina Marie JESSEN, Appellee (Plaintiff).

No. 90–115.

Supreme Court of Wyoming.

May 3, 1991.

Bernard E. Cole and Douglas J. Moench, Jr., Cheyenne, for appellant.

Rocky L. Edmonds, Cheyenne, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

URBIGKIT, Chief Justice.

After the child support payments were brought current pursuant to our prior decision and order in this appeal, *Jessen v. Jessen*, 802 P.2d 901 (Wyo.1990) (*Jessen I*), we now examine the validity for *Jessen II* of a child support late payment provision entered into by the parties. We reverse.

## INTRODUCTION

Presented is the validity of a post-divorce decree stipulated modification entered into by appellant, Kent Jessen (husband) and appellee, Tina Jessen (wife), which requires husband to make very substantial "late charge" payments to wife in the event husband continues to be late in making his child support payments. Husband had paid nearly every support payment late, if paid at all. The district court, in a hearing on a notice to show cause, found husband in contempt for failure to make child support payments and entered a judgment in favor

of wife for past due child support and late charges (compounded interest) totalling $13,275. At the time of husband's initial appeal, he had not purged himself of the contempt even to the extent of satisfying delinquent child support obligations.

This court computed the total amount of child support remaining unpaid through October 1, 1990 as $3,483.71, with additional amounts of $325 due in November and $325 due in December. Based on our decision in *Connors v. Connors*, 769 P.2d 336 (Wyo. 1989), we retained jurisdiction and temporarily remanded to the district court for a period of two months from the date of publication of the opinion, December 20, 1990, to allow husband to pay the outstanding child support payment obligations in order to purge himself of the contempt.[1] *Jessen I*, 802 P.2d 901. If husband did not purge his contempt status, the order of the district court would have become final and wife would have been allowed to enforce the entire judgment of April 13, 1990 in accord with its terms. Having received confirmation that husband brought the outstanding child support payments current within the specified two month period, this court now proceeds to determine the further pending appellate issues raised by husband.

### ISSUES

Is the creation of a "late fee" by a child support obligee an assessment of penalty and hence, unlawful and unenforceable? Is the creation of a "late fee" by a child support obligee permissible where the assessment is so large/egregious as to be unconscionable? Can a money judgment including an amount for a "late fee" created to force payment of child support, be enforced by calling it "liquidated damages" where there is no evidence of damage?

### FACTS

The parties were divorced in 1982. The decree provided that husband was to pay wife $250 per month for support of their one minor child, but that provision was modified following nonpayment collection proceedings by stipulation and an order entered December 20, 1984 which included:

8. That the Defendant [husband] shall pay to the Plaintiff [wife] the sum of $325.00 (Three hundred twenty-five) dollars per month for child support of the child until the child reaches the age of majority, marries, becomes self-supporting, or is emancipated. Said payments are to be made to the Clerk of the District Court, Laramie County, Cheyenne, Wyoming and shall be in the form of money order, certified check, or cash. The first payment shall begin on the first day of May, 1984 and like payments on the first day of each month thereafter. If the Defendant is late paying his child support payment, then a late fee charge of 10% (ten percent) per day for the first 10 days and $5.00 (five) dollars per day thereafter shall be charged on said late child support payment.

On May 29, 1985, husband filed a petition to modify the divorce decree, asking that child support be reduced to the original $250 per month and that the "penalty in paragraph 8 [quoted above] * * * be stricken as constituting an imposition of such a penalty as to be onerous and working a hardship on Defendant [husband]." Other issues, including visitation in particular, were raised in the 1985 proceeding. However, the district court declined to modify paragraph 8 of the 1984 stipulation in any way and no appeal was taken.

On July 6, 1989, wife filed a petition for order to show cause, for judgment, and to modify the divorce decree. The petition sought to compel husband to pay arrearage in his child support of $1,855, as well as other relief. That petition was dismissed with the consent of both husband and wife. On December 29, 1989, wife filed another motion asking that husband be required to satisfy unpaid child support obligations and

---

1. This court did not require husband to pay the punitive penalty "late charges" and that amount of a little less than $9,700.00 remains unpaid.

late charges which could total the computed sum of $230,157. A hearing was held before the district court commissioner on February 26, 1990, and his report was filed with the district court on February 28, 1990. Husband defended by claiming he was coerced into signing the late charge agreement. However, based on the late charge agreement which he validated, the commissioner recommended to the district court that husband be required to pay wife $13,275, some of which was for support owed and the majority of which was late charges as a penalty interest assessment. The commissioner found that the amount owed by husband for late child support, at the rate of $325 per month, was $3,575 as of February 26, 1990.

On April 13, 1990, the district court entered its judgment, based on the report of the court commissioner, and directed husband to pay $13,275 for past due child support and late charges to and including February 26, 1990,[2] and found husband in contempt for failure to pay child support. The contempt citation sentenced husband to three months in the Laramie County Detention Center and provided that he could purge himself of contempt by (a) paying $308.71 for wife's attorney's fees and costs, and (b) providing security on non-exempt property satisfactory to the district court to secure payment of child support as a guarantee of all future support obligations. In addition, husband was ordered to make all child support payments to the clerk of the district court and any payments he made directly to wife would be considered gifts. The district court also continued the child support obligation at $325 per month (husband had asked it to be modified to the original sum of $250 per month) and authorized wife to execute on the security required to be posted with the district court in the event husband was ever again late in making his child support payments. An order directing income withholding under the Income Withholding Act, W.S. 20-6-201 through 20-6-222, was also

entered. Husband filed a timely notice of appeal challenging the orders of the district court.

On May 11, 1990, wife filed yet another petition seeking a finding of contempt against husband because he had failed to comply with the district court's April 13, 1990 judgment. On July 19, 1990, because of husband's delinquency, she filed a "Motion to Dismiss Appeal, or in the Alternative Motion for Order Allowing Supplementation of Record" with this court. Although the May 11 petition had not been disposed of in the district court, this court issued an order on August 7, 1990, allowing the current proceeding in the district court to be made a part of the record on appeal. On the basis of the motion submitted, this court initially declined to dismiss the appeal before briefing on wife's contention that the issues raised by husband in his appeal were res judicata because they had been litigated and resolved against husband in the 1985 proceeding from which no appeal had been taken.

Based on our decision in *Connors*, 769 P.2d 336, this court retained jurisdiction and remanded to the district court for a period of two months from the date of publication of the opinion, December 20, 1990, to permit husband to satisfy outstanding child support payment obligations which, if not satisfied within that time, would have resulted in dismissal of husband's appeal. In *Connors*, we addressed a court's power to deny summarily the demands of litigants who persist in defying the legal orders and processes of jurisdiction, including dismissal of an appeal by a litigant who continues to be in contempt of court in the proceeding from which he seeks to appeal. We declined to adopt an absolute dismissal rule, but opted instead to follow a bright line rule, i.e., where one who is charged with contempt and makes no meaningful, good faith effort to comply with the order on which the contempt cita-

---

**2.** The wife's stated reason for insisting on the late charge agreement was because she was required to pay late fees to her landlord for late rental payments on a basis similar to the terms

incorporated in the late charge agreement. The record does not show what amount of late charges she was ever required to pay, other than that it was "costing [her] a fortune."

tion is based, we will likely dismiss the appeal. *Id.* at 342.

The record revealed that husband had the financial ability to comply with the district court's order, at least to the extent that he is required to pay all arrearage in his child support obligations. Based upon the commissioner's report, this court computed the total amount of support remaining unpaid through October 1, 1990 as $3,483.71, with additional amounts of $325 for November and $325 for December due.

Having received confirmation that husband brought the outstanding child support payments current within the specified two month period, this court now determines the substantive appellate issue raised by husband of the enforceability of the "late charge" agreement. The contested language was 10% per day for ten days and $5 per day thereafter. This is an interest application for each late monthly payment of $325 if not paid in ten days and $5 per day thereafter. The agreed late charges for a thirty-day month would create an additional obligation of $425 total if not then paid to continue with the next monthly payment to accrue an additional add on of $325 after ten days' delinquency. The penalty factor was mathematically "real".

## ANALYSIS

Husband contends these provisions of the parties' stipulated agreement by creating a "late fee" constitutes a penalty and, as such, should not be enforceable against him. We agree. The commissioner characterized the clause as a liquidated damages clause when in reality it is a punitive measure. Factually, it was real and it was punitive.

■ While provisions for liquidated damages are widely recognized as valid and enforceable, courts will not enforce liquidated damages clauses that are punitive in nature. *Walker v. Graham,* 706 P.2d 278, 281 (Wyo.1985); *American Financial Leasing & Services Co. v. Miller,* 41 Ohio App.2d 69, 322 N.E.2d 149, 151 (1974). Whether or not a provision for liquidated damages amounts to a penalty depends upon the circumstances of each individual case, and the question is resolved as a matter of law. *Walker,* 706 P.2d 278; *Marcam Mortg. Corp. v. Black,* 686 P.2d 575, 580 (Wyo.1984); *Ruckelshaus v. Broward County School Bd.,* 494 F.2d 1164, 1165 (5th Cir.1974). *See Abel Const. Co. v. School Dist. of Seward, Seward County,* 188 Neb. 205, 195 N.W.2d 744 (1972); *Babler Bros., Inc. v. Hebener,* 267 Or. 414, 517 P.2d 653 (1973); and *Dave Gustafson & Co. v. State,* 83 S.D. 160, 156 N.W.2d 185 (1968).

■ In *Ray v. Electrical Products Consolidated,* 390 P.2d 607, 608 (Wyo.1964), we adopted the definition of a provision for liquidated damages found in Restatement of Contracts § 339 at 552 (1932):

"(1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless

"(a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and

"(b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation."

■ However, if the liquidated damages bear no reasonable relationship to the amount of actual damages sustained by a breach, they will constitute an unenforceable penalty. *Walker,* 706 P.2d at 282; *Ray,* 390 P.2d at 609.

■ The New York Supreme Court, Appellate Division, decided a case with very similar facts to the case at bar. *Willner v. Willner,* 145 A.D.2d 236, 538 N.Y.S.2d 599 (1989). After the parties were divorced, the husband moved and the wife cross-moved for modification of the husband's child support and alimony obligations. The parties stipulated that in the event of husband's default of seven days after written notice of arrears in child support, husband would pay an additional sum of $110 per week for an extended period of time, retroactive to March 2, 1984, approximately the date of the agreement. In August 1986, wife moved for leave to enter a judgment for arrears. By the time the hearing on

the motions was concluded in March 1987, the purported liquidated damages had accrued to $17,490 (159 weeks at $110 per week). The husband successfully challenged the validity of the liquidated damages clause on the ground that it constituted a "penalty" against public policy.

The New York court relied on the following rule to determine if the purported liquidated damages clause was valid or if it constituted an unenforceable penalty:

"If the amount stipulated in the liquidated damage clause is manifestly disproportionate to the actual damage, then its purpose is not to 'provide fair compensation but to secure performance by the compulsion of the very disproportion' * * * *."

*Willner,* 538 N.Y.S.2d at 602 (quoting *X.L.O. Concrete Corp. v. John T. Brady and Co.,* 104 A.D.2d 181, 482 N.Y.S.2d 476 (1984), *aff'd.* 66 N.Y.2d 970, 498 N.Y.S.2d 799, 489 N.E.2d 768 (1985)).

Further, the *Willner* court held that where there is doubt as to whether a provision constitutes an unenforceable penalty or a proper liquidated damage clause, it should be resolved in favor of a construction which holds the provision to be a penalty. *Willner,* 538 N.Y.S.2d 599.

In *Marcam Mortg. Corp.,* 686 P.2d at 581 n. 3, this court cites the U.C.C. as evidence of the state's public policy on liquidated damages clauses as unenforceable penalties:

Wyoming public policy in this respect is evidenced by § 34–21–297(a), W.S.1977 (Uniform Commercial Code):

"(a) Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in light of the anticipated or actual harm caused by the breach, the diffi-culties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonable large liquidated damages is void as a penalty."

When the principles of "liquidated damages" law are applied to the facts of this case, it is clear that the late fee provision created a penalty plainly disproportionate to the actual damages. The judgment entered by the district court was for $13,275 of which $9,700 was punitive. Further, the actual loss attributed to husband's late payments could have been easily ascertained; therefore, applying liquidated damages in this situation was inappropriate.

In this case, the parties agreed to a method of calculating late fees "borrowed" from a penalty provision found in the wife's lease agreement with her landlord. Wife alleged that husband's late payments created financial difficulties for her which in turn caused her to make late payments to her landlord and subjected her to penalties. However, nothing in the record supports the wife's actual loss in the amount of $9,700 or the originally claimed $230,157. There is no evidence that she was required to pay her landlord a penalty on even one occasion. Thus, the record is wholly insufficient to support either actual damages or a penalty so disproportionate to the underlying obligation. In *Walker,* 706 P.2d 278, we reversed the trial court where we found an earnest money deposit had no reasonable relationship to actual damages. To do otherwise in this case would allow an unconscionable and unjust result.

It is significant to note that child support obligees, as distinguished from obligees seeking enforcement of other money judgments, have been provided with the remedy of contempt and possible incarceration. W.S. 20–2–113(a).[3] In addition, the state

---

3. W.S. 20–2–113(a) (July Supp.1990) provides in pertinent part:

The court has continuing subject matter and personal jurisdiction to enforce or revise the decree concerning the care, custody, visitation and maintenance of the children as the circumstances of the parents and the benefit of the children requires. The court may, upon its own motion or the motion of either parent, require a parent to appear before the court and show just cause why the parent should not be held in contempt of the court, upon a showing that the parent has willfully violated the court's decree as to the care, custody, visitation and maintenance of the children. The court may, in addition to any assessment it may impose upon a finding that the parent is in contempt of court, award attorney's fees, costs, and such other and further relief as the court may deem necessary under the circum-

has mandated the entry of an income withholding order upon entry of a child support order, W.S. 20–2–113(e), thus providing the child support obligee with another effective means of enforcing the support order. Thus, the child support obligee has sufficient remedies available which lend further support to our holding that excessive liquidated damages and penalty provisions are not necessarily appropriate remedies for enforcement of child support obligations.

## CONCLUSION

In conclusion, we find that the paragraph at issue in the parties' stipulated agreement creates a penalty, rather than liquidated damages, and is unenforceable as a matter of law and public policy. This decision is confined by the facts presented and does not determine that every late charge agreement in support obligation settlements will be invalidated. We have no problem finding a manifest disproportionate payment here. *Willner*, 538 N.Y.S.2d 599.

Remanded for further proceedings in conformity herewith.

stances, to the parent aggrieved by the violation of the court's decree, in order to enforce and require future compliance with its decree.