[850 NE2d 1137, 818 NYS2d 161]

BATES ADVERTISING USA, INC., Respondent, v 498 SEVENTH, LLC, Appellant.

Argued March 30, 2006; decided May 11, 2006

**POINTS OF COUNSEL**

*Blank Rome LLP,* New York City (*Edward L. Sadowsky* and *Inbal Paz* of counsel), for appellant. I. The liquidated damages provision was intended as an enforcement mechanism wholly unrelated to allowable compensation and as such was unenforceable. (*JMD Holding Corp. v Congress Fin. Corp.,* 4 NY3d 373.) II. Bates Advertising USA, Inc.'s contribution to delay abrogated its claim for liquidated damages. (*Mosler Safe Co. v Maiden Lane Safe Deposit Co.,* 199 NY 479; *United States v United Engineering & Contracting Co.,* 234 US 236.) III. The trial court rewrote the lease and otherwise misstated the law so as to impose obligations on appellant to which the parties had not agreed. (*Vermont Teddy Bear Co. v 538 Madison Realty Co.,* 1 NY3d 470; *W.W.W. Assoc. v Giancontieri,* 77 NY2d 157; *Matter of*

*Wallace v 600 Partners Co.*, 86 NY2d 543; *Reiss v Financial Performance Corp.*, 97 NY2d 195; *People v Gonzalez*, 68 NY2d 424; *Hayden v New York Rys. Co.*, 233 NY 34; *Mosler Safe Co. v Maiden Lane Safe Deposit Co.*, 199 NY 479; *Lee v Wright,* 108 AD2d 678; *Simon & Son Upholstery v 601 W. Assoc.*, 268 AD2d 359.)

*Greenberg Traurig, LLP,* New York City (*John F. Triggs, Henry M. Greenberg, Israel Rubin* and *Peter Yu, Jr.*, of counsel), for respondent. I. The lease's rent abatement clause is enforceable as a liquidated damages provision. (*JMD Holding Corp. v Congress Fin. Corp.*, 4 NY3d 373; *Truck Rent-A-Ctr. v Puritan Farms 2nd,* 41 NY2d 420; *Hackenheimer v Kurtzmann*, 235 NY 57; *Cotheal v Talmage*, 9 NY 551; *Maxton Bldrs. v Lo Galbo*, 68 NY2d 373; *Clement v Cash*, 21 NY 253; *Kobylack v Kobylack*, 62 NY2d 399; *Matter of Nassau Educ. Ch. of Civ. Serv. Empls. Assn. v Great Neck Union Free School Dist.*, 57 NY2d 658; *Picotte Realty v Gallery of Homes*, 66 AD2d 978; *In re United Merchants & Mfrs., Inc.*, 674 F2d 134.) II. The affirmed factual findings of 498 Seventh, LLC's material breaches of the lease, and the absence of any supposed waiver by Bates Advertising USA, Inc., are beyond this Court's review. (*Glenbriar Co. v Lipsman,* 5 NY3d 388; *Thoreson v Penthouse Intl.*, 80 NY2d 490.)

### OPINION OF THE COURT

READ, J.

In November 1997, plaintiff Bates Advertising USA, Inc., a large advertising and marketing firm, entered into a lease with defendant 498 Seventh, LLC so that Bates might relocate its 700-person worldwide headquarters from the Chrysler Building into space in 498's building in New York City's Garment District. Both plaintiff tenant and defendant landlord, sophisticated business entities, were represented by experienced real estate counsel throughout lengthy negotiations that produced an 85-page lease with 23 exhibits. Bates was to become the building's anchor tenant and occupy approximately 25% of its floor space. The base rent for the 16-year lease, with options and other rent escalations, exceeds $100 million.

Exhibit C to the lease, captioned "LANDLORD'S WORK," lists numerous upgrades and improvements that 498 agreed to make to the building in order to provide Bates with the amenities, safety and security that it had bargained for. Part E of exhibit C lists 11 required alterations, including providing a class E fire alarm and communications system, installing a card key

system for after-hours access to the building, and upgrading an existing freight elevator to passenger-elevator quality. "[I]n an attempt to have the tenancy begin as early as possible while ensuring that [498] would be sufficiently motivated to follow through with these items [in part E of exhibit C] after [Bates] took possession," the parties followed the common practice "adopted by the real estate profession generally" and included a rent abatement clause in the lease (291 AD2d 179, 181 [1st Dept 2002]). Under the terms of this provision, if 498 had not substantially completed the described work by January 1, 1999, and Bates had already moved in and was conducting its ordinary business, then Bates was entitled to abatement of one-half day's rent for each day's delay in substantially completing one or more of nine of the 11 items; and abatement of a full day's rent for each day's delay in substantially completing either or both of the two most important of the 11 items, one of which was provision of a class E fire alarm and communications system.

Bates's lease in the Chrysler Building expired on March 31, 1999, without any renewal options, and so Bates moved into 498's building on March 22, 1999. After an initial and undisputed rent-free period, Bates commenced paying rent as of June 13, 1999, subject to reservation of its rights under the lease's rent abatement clause. Alleging that work required by the lease remained unfinished, Bates commenced this action against 498 in December 1999, seeking refund of rent and other relief. Bates contended that it had not received the benefit of its bargain under the lease, forcing it to occupy space that was less valuable than the top-shelf commercial accommodations envisaged by the parties when they fixed the rent, and posing a threat to its employees' safety and security, its global operations and worldwide computer systems, and its image in the international advertising and marketing industry.

Supreme Court dismissed Bates's causes of action grounded on the rent abatement clause, concluding that this provision was an unenforceable penalty. The Appellate Division reversed on the law, reinstated these causes of action, and remanded the matter for further proceedings. The Appellate Division noted that the situation that the rent abatement clause sought to address was "not unique to these parties" (291 AD2d at 181). Namely, the contracted-for alterations "were a vital part of the deal," but "as a practical matter, it would be difficult for [Bates] to prove the value of its damages arising from a breach of this lease term" because, for example,

"there would be no way of knowing whether a loss of a client, or an employee, had been caused by conditions in the building. Therefore, although [Bates] was willing to begin its tenancy before all the agreed-upon alterations had been completed, and [498] was no less interested in the tenancy beginning, it was necessary for the parties to acknowledge and somehow provide for the possibility of delays attendant to these additional alterations" (*id.*).

The Appellate Division further observed that "[b]y imposing [a] one-to-one proportionality between the days the breach continued and the value of the compensation, the parties successfully avoided the possibility that the tenant would obtain a benefit in gross disproportion to the injury it suffered" (*id.* at 183). Nor was "vast disproportion created by the fact that the full-day abatement would be applicable whether one or both of two possible improvements remained uncompleted," or by the parties' designation of a "group of work items, any or all of which would trigger the *maximum* of a half-day rent abatement for each day of delay" (*id.*). These "minor" disproportions were "as likely to inure to the benefit of the landlord as to that of the tenant" (*id.* at 184).

After a bench trial, Supreme Court concluded that 498 breached the lease by failing to provide the required class E fire alarm and communications system until May 9, 2000, or 412 days after March 23, 1999, the day after Bates moved into the building. There was no dispute that Bates's rent payments for the 412-day period following June 13, 1999, when Bates commenced paying rent, totaled $4,339,528.61. Thus, Supreme Court awarded Bates rent abatement credits in this amount against which to offset future rent payments.* The Appellate Division affirmed "for the reasons stated" by Supreme Court (19 AD3d 290, 290 [1st Dept 2005]). We granted permission to appeal, and now also affirm.

Although 498 protests that it did not breach the lease, Supreme Court concluded otherwise and the Appellate Division affirmed. We may not revisit Supreme Court's affirmed factual

---

* Supreme Court also determined that 498 breached the lease by providing the lobby card access system 314 days late, and the private passenger elevator service 23 days late. Because the rent abatements under the lease's liquidated damages clause run concurrently, the resulting half-day credits for these breaches were subsumed within the $4 million credit.

findings underpinning the determination of breach, which are supported by the record (*see* Karger, Powers of the New York Court of Appeals § 13:10, at 489 [3d ed rev] ["(F)indings of fact made by the *nisi prius* court which have been expressly affirmed by the Appellate Division and have the requisite evidentiary support are . . . conclusive and binding on the Court"]). Moreover, in light of these factual findings, 498 materially breached the lease. Thus, the only remaining issue for us to resolve—and the main point of contention between the parties—is whether the rent abatement clause is a proper remedy for this breach.

Whether a contractual provision "represents an enforceable liquidation of damages or an unenforceable penalty is a question of law, giving due consideration to the nature of the contract and the circumstances" (*JMD Holding Corp. v Congress Fin. Corp.*, 4 NY3d 373, 379 [2005]). The party challenging the liquidated damages—in this case, 498—"must demonstrate either that damages flowing from [the failure to complete on time the items of work called for by the lease] were readily ascertainable at the time [Bates and 498] entered into their [lease], or that [the rent abatement] is conspicuously disproportionate to these foreseeable losses" (*id.* at 380).

498 has not attempted to show that damages attributable to its failure to complete the contracted-for work by the promised date were readily ascertainable at the time the parties entered into the lease. Instead, 498 argues that the rent abatement clause is illegitimate and unenforceable because Bates's attorney testified that the clause was intended to "incentivize" the landlord, and to provide "a club over his head to make sure he gets the work done." But the prospect of damages in the event of breach may always be said to encourage parties to comply with their contractual obligations. Liquidated damages are not transformed into a penalty merely because they operate in this way as well, so long as they are not grossly out of scale with foreseeable losses. In this case, we agree with the Appellate Division that 498 has not demonstrated that the rent abatements are conspicuously disproportionate to Bates's foreseeable losses. Rent abatement was keyed to the number of days of 498's nonperformance, and varied from a half day to a day depending upon the importance of the item of work not completed.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSEN-BLATT, GRAFFEO and R.S. SMITH concur

Order affirmed, with costs.