**L & L WINGS, INC., Plaintiff,**

v.

**MARCO–DESTIN INC., 1000 Highway 98 East Corp., Panama Surf & Sport, Inc., and E & T, Inc., Defendants.**

**No. 07 Civ. 4137 (BSJ) (GWG).**

United States District Court, S.D. New York.

Nov. 5, 2010.

Bennett David Krasner, The Law Offices of Bennett D. Krasner, Atlantic Beach, NY, Diane C. Hertz, Richard S. Taffet, John Paul Son, Bingham McCutchen LLP, New York, NY, for Plaintiff.

Brent G. Wolmer, Cohen, Norris, Scherer, Weinberger & Wolmer, North Palm Beach, FL, Jerold Ira Schneider, Akerman Senterfitt, John Clifton Vetter, Novka Druce & Quigg LLP, West Palm Beach, FL, Scott Michael Kessler, Akerman Senterfitt, LLP, New York, NY, for Defendants.

### Opinion and Order

BARBARA S. JONES, District Judge.

On May 28, 2007, Plaintiff L & L Wings, Inc. ("Plaintiff") filed suit against Defendants Marco–Destin, Inc., 1000 Highway 98 East Corp., Panama Surf & Sport, Inc., and E & T, Inc. (collectively "Defendants") alleging breach of contract, trademark infringement under the Lanham Act,

violations of the New York General Business Law, and common law service mark infringement and unfair competition. On December 18, 2009, this Court granted Plaintiff's Motion for Partial Summary Judgment on liability and denied Defendants' Cross Motion for Partial Summary Judgment on liability. On January 27, 2010, Plaintiff's filed a Motion for Summary Judgment on Damages. For the reasons set forth below, Plaintiff's Motion for Summary Judgment on damages is GRANTED in part and DENIED in part.

## BACKGROUND

This Order assumes familiarity with the facts set forth in *L & L Wings, Inc. v. Marco–Destin, Inc. et al.*, 676 F.Supp.2d 179 (S.D.N.Y.2009) ("*L & L Wings I*"), which addressed the parties' cross-motions for partial summary judgment. In that Order, issued on December 16, 2009, this Court concluded that Plaintiff was entitled to summary judgment on its breach of contract claim, trademark infringement claim under the Lanham Act, and claims arising under New York statutory and common law.

Before the Court is Plaintiff's Motion for Summary Judgment on Damages. Plaintiff seeks (1) liquidated damages pursuant to the Licensing Agreement; (2) additional damages under Lanham Act Section 35(a); (3) punitive damages; (4) attorneys' fees and costs; and (5) an order directing Defendants to permanently cease any further use of the Mark and Trade Dress.

For the reasons to follow, the Court (1) finds the liquidated damages provision in the Licensing Agreement reasonable, but determines that there remain disputed issues of fact with regard to the calculation of liquidated damages; (2) denies plaintiff's motion for additional damages under Lanham Act Section 35(a); (3) denies plaintiff's motion for punitive damages; (4) grants plaintiff's motion for attorneys' fees and costs; and (5) orders Defendants to permanently cease any further use of the Mark and Trade Dress.

## DISCUSSION

To prevail on a motion for summary judgment, a party must establish that there is no genuine issue of material fact in dispute such that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). "In determining whether there are genuine issues of material fact, we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir.2003) (quoting *Stern v. Trustees of Columbia Univ. in the City of N.Y.*, 131 F.3d 305, 312 (2d Cir.1997)). Uncertainty regarding the true state of any material fact is enough to defeat a motion for summary judgment. *United States v. One Tintoretto Painting*, 691 F.2d 603, 606 (2d Cir.1982). However, "the mere existence of some alleged factual dispute between the parties," without more, will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. There must be enough evidence in support of the non-moving party's case such that "a reasonable jury could return a verdict" in its favor. *Id.* at 248, 106 S.Ct. 2505 (internal citation omitted).

### A. Reasonableness of the Liquidated Damages Provision

Plaintiff seeks an award of damages in the amount of $2,109,600 for breach of contract based on the liquidated damages provision of the Licensing Agreement (the

"Agreement"), dated February 17, 2000. in relevant part, Section 8 of the Agreement provides:

> Licensee specifically acknowledges that the use of the Mark, the name "Wings" or any Similar Name and/or the use of the Licensor's Trade Dress after the Termination Date will cause Licensor to suffer irreparable harm, damages for which would be extremely difficult to ascertain. Therefore, in addition to all other remedies, including but not limited to injunctive relief, in the even of Licensee's breach of this Agreement to which Licensor shall be entitled, Licensor shall be entitled to injunctive relief, and liquidated damages in the sum of $200.00 per day ... per business establishment utilizing the Mark and/or name "Wings" and/or any Similar Name or Trade Dress until cessation of any improper use, together with all costs and disbursements, including reasonable attorney's fees arising from Licensee's failure to promptly use the name "Wings" or any Similar Name or Trade Dress. The calculation of the liquidated damages of $200.00 per day per business establishment shall be calculated without regard to the four month period ... if Licensee does not comply with the terms and conditions of the removal set-forth herein within said four month period.

#### i. Applicable Law

The reasonableness of such a liquidated damages provision is a question of law for the Court, "giving due consideration to the nature of the contract and the circumstances." *Bates Adver. USA, Inc. v. 498 Seventh, LLC,* 7 N.Y.3d 115, 120, 818 N.Y.S.2d 161, 850 N.E.2d 1137 (2006) (internal quotation marks and citation omitted). New York law "favors freedom of contract through the enforcement of stipulated damage provisions so long as they do not clearly disregard the principle of compensation." *JMD Holding Corp. v. Cong. Fin. Corp.,* 4 N.Y.3d 373, 380–81, 795 N.Y.S.2d 502, 828 N.E.2d 604 (2005) (quoting 3 Farnsworth, Contracts § 12.18 at 303–04 (3d ed.)). "Parties to a contract have the right ... to specify within a contract the damages to be paid in the event of a breach, so long as such a clause is neither unconscionable nor contrary to public policy." *Rattigan v. Commodore Int'l Ltd.,* 739 F.Supp. 167, 169 (S.D.N.Y. 1990).

The reasonableness of the liquidated damages and the certainty of actual damages must be measured as of the time the parties enter the contract, not as of the time of the breach. *Vernitron Corp. v. CF 48 Assocs.,* 104 A.D.2d 409, 478 N.Y.S.2d 933, 934 (2d Dep't 1984). As such, a liquidated damages provision will be upheld "if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation.... If, however, the amount fixed is plainly or grossly disproportionate to the probable loss, the provision calls for a penalty and will not be enforced." *Kingsbridge Med. Ctr., P.C. v. Hill,* 357 F.Supp.2d 754, 758 (S.D.N.Y. 2005) (citing *Truck Rent–A–Center, Inc. v. Puritan Farms 2nd, Inc.,* 41 N.Y.2d 420, 393 N.Y.S.2d 365, 361 N.E.2d 1015 (1977)).

In order to challenge a liquidated damages provision, a party "must demonstrate either that damages flowing from a prospective [breach] were readily ascertainable at the time [the parties] entered into their [contract], or that the [liquidated damages are] conspicuously disproportionate to these foreseeable losses." *JMD Holding,* 4 N.Y.3d at 380, 795 N.Y.S.2d 502, 828 N.E.2d 604. "The burden is firmly on the party challenging the provision to provide that justification by demonstrating that the stipulated damages are, in fact, an

unconscionable penalty." *GFI Brokers, LLC v. Santana,* 2009 WL 2482130, Nos. 06 Civ. 3988(GEL), 06 Civ. 4611(GEL), at *2 (Aug. 13 2009 S.D.N.Y.). "[W]here there is doubt as to whether a provision constitutes an unenforceable penalty or a proper liquidated damage clause, it should be resolved in favor of a construction which holds the provision to be a penalty." *Willner v. Willner,* 145 A.D.2d 236, 538 N.Y.S.2d 599, 602 (2d Dep't 1989).

■ When evaluating a liquidated damages provision, a court must also give due consideration to "whether the parties were sophisticated and represented by counsel, the contract was negotiated at arms-length between parties of equal bargaining power, and ... that [the provision] was freely contracted to." *The Edward Andrews Group, Inc. v. Addressing Servs. Co., Inc.,* No. 04 Civ. 6731(LTS)(AJP), 2005 WL 3215190, at *6 n. 3 (S.D.N.Y. Nov. 30, 2005) (internal quotation marks and citations omitted).

### ii. Analysis

Defendants contend that "the contractually agreed-upon liquidated damages clause, of $200 per day per store, or $73,000 per store per year, is a coercive penalty." (Def. Br. 21). Defendants note that Plaintiff's Fed.R.Civ.P. 30(b)(6) designee witness on damages referred to the provision as a "penalty." (Def. Br. 22). Defendants argue that the amount of $200 per day, per store does not bear a relationship to any other facet of the business or any potential actual damages. (Def. Br. 30). Defendants also argue that the non-compete provisions of the Agreement prohibited Plaintiff from competing in Defendants' territory for an additional 10 years, ensuring that no actual damages were possible if breach occurred, and thereby rendering the liquidated damages provision a coercive penalty. (Def. Br. 33).

■ The Court finds that the liquidated damages provision in the Agreement does not constitute an unenforceable penalty. "Liquidated damages clauses are suited to factual situations where there is uncertainty concerning the measure of damages." *Willner,* 538 N.Y.S.2d at 602. Here, where the damages result from the continued use of a trademark after the expiration of a license, is just such a situation.

Even though no diversion of sales from Plaintiff to Defendants was possible due to the non-compete provisions in the Agreement, this does nor render the liquidated damages provision unreasonable. This Court found that Defendants' use of the Mark was likely to cause consumer confusion. *L & L Wings I,* 676 F.Supp.2d at 188. Such a loss of control of a trademark puts Plaintiff's "reputation beyond its own control." *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology,* 794 F.2d 38, 44 (2d Cir.1986). "[I]t is that loss of control which is the very thing that constitutes irreparable harm in the licensing context." *Id.* This potential harm to Plaintiff's reputation and goodwill caused by post-termination use of the Mark would be nearly impossible to quantify at the time the Agreement was signed in February, 2000. Thus, this is not a case where "the damages fixed are plainly disproportionate to the injury, and the plaintiff's actual loss is susceptible of calculation." *Evangelista v. Ward,* 308 A.D.2d 504, 764 N.Y.S.2d 705, 706 (2d Dep't 2003).

In the Agreement, the parties settled on liquidated damages of $200 per day, per store. This arrangement preserved the one-to-one proportionality between the days the breach continued and the value of compensation. *See Bates Adver. USA,* 7 N.Y.3d at 119, 818 N.Y.S.2d 161, 850 N.E.2d 1137. Just because the liquidated damages could be characterized as a "pen-

alty," as Plaintiff's 30(b)(6) witness did, "the prospect of damages in the event of a breach may always be said to encourage parties to comply with their contractual obligations. Liquidated damages are not transformed into a penalty merely because they operate in this way as well, so long as they are not grossly out of scale with foreseeable losses." *Id.* at 120, 818 N.Y.S.2d 161, 850 N.E.2d 1137. To the extent that the damages are now significant, it is because Defendants willfully continued to use the Mark and Trade Dress in at least eleven stores in connection with the sale of beachwear and accessories for a significant period of time after October 31, 2006. *L & L Wings I,* 676 F.Supp.2d at 187.

In addition, the parties' respective bargaining positions at the time of creation supports the enforceability of this liquidated damages clause. Much of the traditional "[h]ostility to liquidated damages clauses reflects a concern that such clauses are often unconscionably imposed by the stronger, or more sophisticated party on the weaker." *Jordache Enter., Inc. v. Global Union Bank,* 688 F.Supp. 939, 944 (S.D.N.Y.1988). Though clearly not dispositive, this concern is not present here. In *L & L Wings I,* this Court found that Defendants were sophisticated and represented by competent counsel who played a key role in the drafting of the agreement. *L & L Wings I,* 676 F.Supp.2d at 186–87. Nothing about the parties' respective bargaining positions or the circumstances surrounding the negotiation of the agreement indicates that the liquidated damages clause was anything other than the product of an arms' length negotiation rather than "a situation fraught with possible overreaching." *GFI Brokers,* 2009 WL 2482130, at *8.

Thus, for the reasons stated above, it is determined that the liquidated damages provision provided for in the Agreement is reasonable.

### B. Calculation of Liquidated Damages

Plaintiffs seek Summary Judgment on the amount of damages pursuant to the liquidated damages provision for Defendants' continued unauthorized use of Plaintiff's Mark and Trade Dress after the termination of the Agreement on October 31, 2006. Plaintiff alleges that it is entitled to an award of $2,109,600 based upon the continued use of 12 stores after the termination date-Plaintiff calculates that 7 stores were in violation for 714 days, 1 store was in violation for 814 days, and 4 stores were in violation for at least 1,184 days. Plaintiff also claims that the use of the trade dress continues to this day in 4 stores and seeks additional liquidated damages consistent with the Agreement. (Pl. Br. 6).

Defendants argue that Plaintiff incorrectly calculated the number of days that the Mark and Trade Dress were used by Defendants after October 31, 2006. Defendants contend that as of November 1, 2006, the Mark and/or the Trade Dress were used in only 11 stores. Defendants also contest Plaintiff's dates for when use of the trademark ceased. Defendants claim that they changed their website, removed their WINGS exterior signage, removed interior signage and hang tags, and had their credit card company change the credit card receipts and printing on credit card statements earlier than Plaintiff alleges. (Def. Br. 21) Among other things, Defendants also claim that the erroneous continued use of the Mark by a credit card company on purchasers' credit card statements cannot be attributed to Defendants, and that store 320 was never a Wings store and that the Mark and Trade Dress were never used by Defendants at that

store at all. (Def. Br. 40). Defendants also argue that the Trade Dress consists of a combination of a wave design and neon lights. Thus, when the use of the neon lights was discontinued, use of the Trade Dress discontinued as well. By Defendants' calculation, use of the Mark and Trade Dress continued beyond October 31, 2006 for a combined 7,334 days in 11 stores, for a total liquidated damages amount of $1,466,800.

When determining whether there is a genuine issue of material fact, a court must resolve all ambiguities and draw all reasonable references against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 38 (2d Cir.1994).

■ Resolving all inferences against the moving party, there clearly remain issues of material fact, including the question of when individual stores stopped using the Mark and Trade Dress. As such, the Court DENIES Summary Judgment on the number of days the use of the Mark and Trade Dress by Defendants continued after October 31, 2006. Plaintiff is advised to inform the Court as to how it wants to proceed in the calculation of liquidated damages.

### C. Damages Under Lanham Act § 35(a)

In addition to the enforcement of the liquidated damages provision of the Agreement, Plaintiff seeks Defendants' profits from the infringing stores under § 35(a) of the Lanham Act, codified at 15 U.S.C. § 1117(a). Plaintiff argues that an ac-counting of Defendants' profits is merited in order to prevent Defendants' unjust enrichment from their continued use of the Mark and to deter further infringement. (Pl. Reply Br. 5). Defendants argue that an award of damages under the Lanham Act represents an impermissible double recovery and that, in any event, damages under the Lanham Act are inappropriate in this instance. For the following reasons, Plaintiff's motion for an award of damages under the Lanham Act is DENIED.

Under the Lanham Act, a plaintiff may seek either actual damages under § 1117(a) or statutory damages under § 1117(c). 15 U.S.C. § 1117. There are three distinct rationales for an award of profits under the Act, namely "if the defendant is unjustly enriched, if the plaintiff sustained damages from the infringement, or if the accounting is necessary to deter a willful infringer from doing so again." *Empresa Cubana Del Tabaco v. Culbro Corp.*, 123 F.Supp.2d 203 (S.D.N.Y.2000), (*quoting George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992)). As the Second Circuit has made clear, a plaintiff seeking compensation for a single injury under different legal theories is only entitled to one recovery. *See Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir.1995). Thus, in light of the liquidated damages provision of the Agreement, discussed supra, the only purpose that an accounting of Defendants' profits could serve would be to prevent Defendants' unjust enrichment and to deter further willful infringement.

The statute itself provides little guidance when determining damages under the Lanham Act. As such, courts are left with broad discretion in awarding damages. *See e.g., Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F.Supp.2d 161, 166 (S.D.N.Y.1999). Section 1117(a) reads, in part:

If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

15 U.S.C. § 1117(a).

 Thus, a prevailing plaintiff is not automatically entitled to an accounting for the defendant's profits. Rather, "[u]nlimited enhancement or reduction of an award based on defendant's profits is permitted in order to correct inadequacy or excessiveness." *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 109 (2d Cir.1988). When determining the damages award, a finder of fact may consider: "the degree of certainty that the defendant benefited [sic] from the unlawful conduct" and the "availability and adequacy of other remedies," among other things, to determine whether, "on the whole, the equities weigh in favor of an accounting." *George Basch,* 968 F.2d at 1540. In this instance, the Court finds that the equities weigh against an accounting.

First, it bears repeating that there was no head-to-head competition between Plaintiff and Defendants. Plaintiff did not operate any stores or otherwise compete with Defendants in their exclusive territory at the time of the breach. Indeed, under the Agreement, Plaintiff could not compete or license any other competitors in Defendants' territory for the next ten years. Nor is there any showing that the Defendants committed any affirmative acts designed to deliberately deceive customers. In addition, according to Plaintiff's own Rule 30(b)(6) witness, location, store management, price point of merchandise, variety of merchandise, and advertising are the main factors that contribute to profitability. (Def. 56.1 Statement ¶ 112).

Under these circumstances, it is more likely that Defendants profits were overwhelmingly attributable to these factors than they were to the Defendants' holdover use of the Mark. Indeed, it is not at all certain that Defendants continued use of the Mark led to any substantial additional profits.

Second, the liquidated damages provision in the Agreement provides an adequate alternative remedy, whereas an accounting would unjustly overcompensate for Plaintiff's actual injury and create a windfall judgment at Defendants' expense. *See George Basch,* 968 F.2d at 1540.

In sum, Plaintiff has not made the requisite showing that disgorgement of profits is necessary to prevent Defendants' unjust enrichment or to that it is necessary to deter Defendants from continued use of the Mark. Given that profits are overwhelmingly attributable to factors other than the holdover use of the Mark and the availability of the liquidated damages provision, the Court finds that an award of Defendants profits would be inequitable.

For the reasons set forth above, Plaintiff's Motion for an Order directing Defendants to disgorge to Plaintiff their infringing profits pursuant to Section 35(a) of the Lanham Act and enhanced damages under the Lanham Act is DENIED.

### D. Punitive Damages

 Plaintiff seeks to recover punitive damages under its state unfair competition claim. It bases this request on the Court's finding that Defendants willfully infringed on Plaintiff's Mark. Under New York law, punitive damages are available "where a defendant's conduct has constituted gross, wanton, or willful fraud or other morally culpable conduct to an extreme degree."

*Getty Petroleum Corp. v. Island Transp. Corp.*, 878 F.2d 650, 657 (2d Cir.1989) (quotation marks and citations omitted). Plaintiff has not made the requisite showing that Defendants' conduct was extreme to the degree that would make an award of punitive damages appropriate here. As such, Plaintiff's motion for punitive damages under New York's unfair competition law is DENIED.

### E. Attorneys Fees, Costs, and Continued Use of the Mark and Trade Dress

Plaintiff seeks an award of reasonable attorneys' fees under the Agreement and under the Lanham Act. Section 8 of the Agreement provides that Plaintiff is entitled to an award of reasonable attorneys' fees in the event of the licensee Defendants' breach of the Agreement.[1]

██ Under New York Law, "while parties may agree that attorneys' fees should be included as another form of damages, such contracts must be strictly construed to avoid inferring duties that the parties did not intend to create." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir.2003). Here, the provision clearly states that Licensor is entitled to reasonable attorneys' fees arising from breach of the Agreement. Further, Defendants do not deny Plaintiff's entitlement to attorneys' fees under the Agreement. Plaintiff's motion for summary judgment for attorneys' fees pursuant to the Agreement is GRANTED. As such, the Court need not reach the question of whether this is one of the "exceptional cases" where a court may award reasonable attorney fees to the prevailing party under the Lanham Act. 15 U.S.C. § 1117(a).

At the conclusion of the matter, Plaintiff is instructed to submit contemporaneous time records that show, for each attorney, the date, the hours expended, and the nature of the work done.

Defendants claim that they are no longer using the Trade Dress or Mark in any of their stores. To the extent that any use continues, in light of the liability determination in *L & L Wings I*, Defendants are ordered to permanently cease further use of the Mark and Trade Dress.

### CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment on Damages is GRANTED in part and DENIED in part. The Court (1) grants summary judgment with respect to the reasonableness of the liquidated damages provision in the Agreement; but (2) determines that there remain disputed issues of material fact as to the calculation of the liquidated damages; (3) denies Plaintiff's motion for additional damages under Lanham Act Section 35(c); (4) denies Plaintiff's motion for punitive damages; (5) grants plaintiff's motion for attorneys' fees and costs; and (6) orders Defendants to permanently cease any further use of the Mark and Trade Dress.

The parties are directed to meet and confer with each other and submit a joint pre-trial order on or before December 15, 2010.

**SO ORDERED.**

---

1. Section 8 of the Agreement states, in part: "Licensor shall be entitled to ... reasonable attorneys fees arising from Licensee's failure to promptly use the name 'Wings' or any Similar Name or Trade Dress."