939 So.2d 1154 (2006)
EMMA PEARL WILLIAMS, Appellant/Cross-Appellee,
v.
JAMES WILLIAMS, JR., Appellee/Cross-Appellant.
Case No. 2D05-3980.
District Court of Appeal of Florida, Second District.
Opinion filed October 20, 2006.
John A. Naser, Lakeland, for Appellant/Cross-Appellee.
Debra J. Sutton of The Sutton Law Firm, Bartow, for Appellee/Cross-Appellant.
SILBERMAN, Judge.
Emma Pearl Williams, the Wife, appeals an order granting in part and denying in part her motion to enforce the parties' mediation agreement.[1] James Williams, Jr., the Husband, cross-appeals and argues that the trial court should have set aside the agreement in its entirety.
We reject the arguments raised in the Husband's cross-appeal and affirm the order to the extent that it grants the Wife's motion to enforce the mediation agreement. However, we reverse the order in two respects. First, we reverse the trial court's determination that the Husband was under duress as to the provision in the agreement addressing refinancing of the marital home. Second, we reverse the trial court's modification of the agreement to require the sale of the marital home in the event the Wife is unable to refinance it.
After the Wife filed her petition for dissolution of marriage, the trial court ordered the parties to mediation. At the mediation conference, the parties reached an agreement and executed a written mediation agreement, settling a number of issues. The agreement provides that the Wife shall be designated the primary residential parent for the parties' two minor children. Further, it provides as follows:
4. WIFE'S EQUITABLE DISTRIBUTION: The Wife shall receive as an equitable distribution the following:
a. The marital home located at 3465 Jade Court, Mulberry FL 33860. The Husband shall convey to the Wife all his right, title, and interest in and to the marital home. The Wife shall be responsible for paying the mortgage and shall hold the Husband harmless for payment of same. The Husband shall vacate the marital home on or before April 1, 2005. The Wife agrees to make a good-faith effort to refinance the marital home within ninety (90) days after the entry of the Final Judgment.
Eventually, the Wife filed a motion to enforce the mediation agreement, asserting that the Husband failed to comply with its terms.
At an evidentiary hearing on the motion to enforce, the Husband claimed that he signed the agreement without understanding it. He complained about the child support provision and stated that he would not agree to the Wife staying in the marital home. He did not provide any detail as to his financial situation but asserted that the provisions as to child support and the marital home would leave him without enough money for his own expenses. He added that he did not want a divorce and that he thought he and the Wife would "make up." He testified that he signed the agreement because he "was going along with the program" but that "I didn't agree." He also stated that he had not consulted with his attorney before signing the agreement.
The mediator told the court that each party was represented by counsel at the mediation conference. He explained the negotiations that took place and stated that the Husband asked and got answers to his questions. He added that the Husband did not appear to be confused in any way and that he had "no doubt" the Husband understood what he was signing.[2]
The attorney who represented the Husband at the mediation conference testified that she discussed the details of the settlement proposals with the Husband to make sure there were no misunderstandings.[3] The parties agreed to the wording in the agreement that the Wife would be responsible for making the mortgage payments and would make a good faith effort to refinance the home. The good faith language was used because the parties recognized refinancing might not be possible. The attorney added that she went through the agreement with the Husband "word-for-word" and had "no doubt" that he understood the agreement.
The trial court expressed concern about the refinancing language, stating "[i]t's not language that I particularly like. It's language that should have said that there is an alternative, should she be unable to refinance." In its written order, the trial court determined "that the Husband understood what was taking place at the mediation and understood the agreement." However, the court found that the refinancing provision was unfair to the Husband and that he was under duress "on this one issue." The court added that the parties intended that the home would be sold if the Wife could not refinance it. The court ordered the Wife to refinance the home and directed that if she did not obtain refinancing within ninety days after entry of the final judgment of dissolution, the home "shall be sold."
The Wife argues that no evidence supported the findings of duress and intent or otherwise supported the relief ordered by the trial court. Thus, she contends, the trial court erred by rewriting the agreement and by failing to enforce the parties' agreement.
Florida Rule of Civil Procedure 1.540 "provides the framework for challenging settlement agreements entered into after the commencement of litigation and utilization of discovery procedures." Macar v. Macar, 803 So. 2d 707, 713 (Fla. 2001); see also Fla. Fam. L.R.P.12.540. Rule 1.540(b) provides in pertinent part as follows:
On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, decree, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial or rehearing; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) that the judgment or decree is void; or (5) that the judgment or decree has been satisfied, released, or discharged, or a prior judgment or decree upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or decree should have prospective application.
Although the trial court focused on unfairness and duress to grant relief to the Husband, the evidence simply does not support any of the grounds available for relief under rule 1.540(b).
Even if the court is correct that the refinancing provision is unfair to the Husband, this does not provide a legal basis for the court to rewrite the parties' agreement or to set it aside. "Bad domestic bargains-meaning unfair or unreasonable property and monetary settlement agreements-are nevertheless enforceable so long as they are knowing, voluntary and not otherwise against public policy." Petracca v. Petracca, 706 So. 2d 904, 911 (Fla. 4th DCA 1998); see also Wells v. Wells, 832 So. 2d 266, 269 (Fla. 4th DCA 2002) ("[T]he agreement settling the dissolution of marriage litigation was not subject to a `fair and reasonable' inquiry by the court."). Further, rule 1.540 "is not intended to relieve a party from its own tactical mistakes." Fla. High Sch., Activities, Inc. v. Latimer, 750 So. 2d 762, 763 (Fla. 3d DCA 2000).
Regarding duress, it "is a condition of mind produced by an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition." Herald v. Hardin, 116 So. 863, 864 (Fla. 1928); Cooper v. Cooper, 69 So. 2d 881, 883 (Fla. 1954) (quoting Herald). Here, no evidence supports the conclusion that the Husband was under duress in executing the agreement or the refinancing provision. Rather, the evidence reflects that the Husband did not want to get divorced and that he had misgivings about the agreement and how it would impact him. As the trial court found, the Husband understood the agreement and what took place at the mediation conference.
Finally, the evidence does not support the trial court's conclusion that the parties intended to sell the home if the Wife could not obtain refinancing. Instead, the evidence and the mediation agreement reflect that the parties agreed the Wife would be the primary residential parent for the minor children and would take title to the home. The Husband would vacate the home about one month after the date of the agreement. The Wife would be responsible to pay the mortgage and would hold the Husband harmless for the mortgage payments. The parties agreed the Wife would make a good-faith effort to refinance the home, but they recognized that the Wife might not be able to obtain refinancing. The evidence does not reflect that the parties ever discussed or sought to address in the agreement the possibility of selling the home if refinancing were not available.
Because the Husband failed to present any legal grounds for relief from the mediation agreement, the trial court should have enforced it in its entirety and should not have modified its terms. Accordingly, we affirm the trial court's order to the extent it grants the motion to enforce, but we reverse to the extent the order finds the Husband was under duress and revises the agreement to provide for sale of the marital home in the event the Wife is unable to refinance. We remand for further proceedings consistent with this opinion.
Affirmed in part, reversed in part, and remanded.
WHATLEY, J., and DANAHY, PAUL W., SENIOR JUDGE, Concur.
NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.
NOTES
[1] Pursuant to this court's earlier order in this matter, we review the Wife's appeal pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(B) because the order is functionally equivalent to an interlocutory injunction.
[2] The mediator testified without objection and without any party asserting confidentiality as to the mediation communications. See § 44.405, Fla. Stat. (2005).
[3] The Husband waived the attorney-client privilege, enabling the attorney to testify at the hearing. That attorney did not represent the Husband at the hearing and does not represent him in this appeal.