MAKAR, J.,
concurring in part, dissenting in part.
At issue is whether a court in a divorce proceeding must enforce an illegal penalty clause contained in a supplemental agreement to which both parties agreed. The former husband, who raises a number of other issues, argues that he should not be required to pay the penalties to which he agreed as formalized in the supplemental judgment below. I concur in affirmance as to the other issues raised, but would reverse and remand with instructions to determine actual damages for the former husband’s breach.
I. Background
The parties’ marriage was dissolved in a final judgment entered on May 30, 2008. One part of the mediation agreement, which was incorporated in the final judgment, related to the sale of the marital home: the former husband would retain sole ownership but pay the former wife half of the home’s equity. Pertinent to this appeal, the agreement also required the former husband to “refinance the mortgage and home equity loan on the marital home within 90 days” and the former wife would concurrently provide a special warranty deed.
When the former husband failed to complete the refinancing, the former wife moved for the former husband to comply with this requirement and for contempt if he did not do so in a timely manner. Just •prior to the April 5, 2010 hearing on the matter, the parties resolved their dispute and reduced it to writing in a supplemental agreement. The former husband agreed to either refinance the home or ensure the former wife had no liability on the line of credit by June 5, 2010. The settlement agreement also provided: “If [former husband] does not have [former wife] removed from liability on the HELOC on or before June 7, 2010, he agrees to pay a penalty in the amount of $1,500.00 per week, or $214.28 per day.” The prevailing party would be entitled to attorneys’ fees if a dispute arose under the supplemental agreement, which was eventually submitted to the court. A supplemental judgment was entered on June 7, 2010.
The former husband undertook to refinance the home, but was unsuccessful. He eventually paid in full the home equity line of credit on October 26, 2010, which was approaching five months after the refinancing deadline of June 7, 2010. The former wife then moved to enforce the supplemental final judgment, seeking an award against the former husband in the amount of $31,285.68 in accrued penalties (plus interest and attorneys’ fees) for the time it took the former husband to pay off and remove her from the line of credit. The former husband argued the penalties *260 were unenforceable, but the trial court found this argument “disingenuous” and entered judgment in the amount of $29,999.20, which is the daily penalty at the rate of $214.28 for 140 days, plus interest and attorneys’ fees. This appeal ensued.
II. Analysis
The penalty clause in the supplemental agreement imposing $1500 weekly fines is invalid under Florida law, which has long made such monetary sanctions verboten. While our state jurisprudence allows the imposition of liquidated damages as a remedy for breaching an agreement, it is. deemed unlawful to compel the payment of penalties for having done so.[1] At first blush, a court should not enforce this aspect of the parties’ settlement agreement given its illegality.
A countervailing point made by the former wife, however, is that the former husband agreed to the penalties, which were incorporated in the supplemental final judgment. He did not file an appeal from the supplemental judgment, choosing instead to seek review now that the judgment has been enforced against him. See Wells v. Wells, 832 So.2d 266, 269 (Fla. 4th DCA 2002) (noting that spouse “did not challenge this provision either before or after it was incorporated into the final judgment”). In Florida, it is a general principle that a collateral challenge to the terms incorporated into a judgment is impermissible, primarily to ensure the finality of judicial proceedings; exceptions exist under Florida Rule of Civil Procedure 1.540, none of which are at issue here. See Williams v. Williams, 939 So.2d 1154, 1157 (Fla. 2d DCA 2006) (discussing the rule’s application and that it is not designed to relieve parties from “tactical mistakes”). The former wife asserts that if the former husband felt the terms of settlement were such an onerous bargain he should have sought to void them via a direct appeal, which he failed to do.
The former husband here made a bad bargain; one might say it is unfair or unreasonable for him to have to pay such a hefty sanction for missing the agreed-upon deadline. But his case is not about a bad bargain that courts are unwilling to undo or rewrite. As the Second District in Williams noted, “[e]ven if the court is correct that the refinancing provision is unfair to the Husband, this does not provide a legal basis for the court to rewrite the parties’ agreement or to set it aside.” Id.) see also Wells, 832 So.2d at 269 (upholding requirement that husband transfer his interest in marital home if he made child support payment late).
Rather, the question presented is whether the enforcement of the illegal penalty clause in the settlement agreement can be collaterally attacked as contrary to public policy. In Williams, the former wife and husband both sought to challenge the enforcement of a mediation agreement to which they had agreed and that had been incorporated in a final judgment. In the enforcement action, the former husband made a collateral attack on the judgment, arguing it was unfair and *261 unreasonable as to his interests. The Second District, in reversing the trial court’s modifications to the terms of the parties’ agreement, stated: “Bad domestic bargains — meaning unfair or unreasonable property and monetary settlement agreements — are nevertheless enforceable so long as they are knowing, voluntary and not otherwise against public policy.” Williams, 939 So.2d at 1157 (quoting Petracca, v. Petracca, 706 So.2d 904, 911 (Fla. 4th DCA 1998)) (emphasis added). The italicized language recognizes an exception to enforcement, even in a collateral proceeding, where the “domestic bargain” is contrary to the “public policy” of the state.
What are the parameters of a public policy exception? At one extreme, a court would not enforce an agreement, even if knowingly and voluntarily entered by the former husband, requiring him to chop off his ring finger for failing to comply with the settlement; to do so would be against public policy, even in a collateral proceeding. But what about purely economic activities such as price-fixing agreements or penalty clauses? See generally Restatement (Second) of Contracts § 178 (1981). In the commercial context, courts have been willing to deny relief where a judgment shelters an otherwise illegal restraint of trade. See Miller v. Preefer, 1 So.3d 1278, 1282-83 (Fla. 4th DCA 2009) (finding that “settlement agreement, even though it contained an illegal covenant restraining trade, essentially became sheltered within the judgment”). In the family law context, one court refused to invalidate a “presumptively valid” final judgment allowing a former husband to contract away his child support obligations (which is against public policy), but noted the former wife can remedy the situation by filing a petition to modify the final judgment. Dep’t of Health & Rehabilitative Servs. v. Morley, 570 So.2d 402, 404 (Fla. 5th DCA 1990) (“[N]o contract or order can divest a court of its authority to modify child support.”).
No court in Florida has addressed whether the enforcement of an illegal penalty clause in a marital settlement agreement incorporated into a judgment can be collaterally attacked. Courts around the country are split. For instance, in Jessen v. Jessen, 810 P.2d 987, 992 (Wyo.1991), the court held that a post-divorce modification that imposed “late charges” on a former husband for late child support payments was an unenforceable penalty “as a matter of law and public policy.” It did so in the context of a collateral challenge. Id. at 988-90. In Willner v. Willner, 145 A.D.2d 236, 538 N.Y.S.2d 599 (N.Y.App.Div.1989), the appellate court held that payment of an additional $110 per week after notice of default was an unenforceable penalty. Id. at 600 (“This is a classic case of a purported ‘liquidated damages’ clause. In reality, it constitutes a punitive measure which, as a matter of law, is an unenforceable penalty.”). Willner too was a collateral challenge to the enforcement of a post-dissolution modification to the parties’ original settlement. Id. at 600-01. This rule of law was recently reaffirmed in Chumsky v. Chumsky, 64 A.D.3d 1156, 881 N.Y.S.2d 774 (N.Y.App.Div.2009), which stated that where “a stipulation provides for an amount to be paid as a consequence of a breach that is plainly or grossly disproportionate to the probable loss, the provision calls for a penalty and will not be enforced.” Id. at 775 (internal citations omitted).
To the contrary are examples from Mississippi and Connecticut. In Mississippi, marital settlement agreements are treated as “quasi-contracts” and may include penalty clauses that would otherwise be unenforceable in a commercial contract. Varner v. Varner, 666 So.2d 493, 496-97 (Miss.1995). In Varner, the Mississippi Su *262 preme Court held that “there is more at work than general contract law” in marital settlement agreements; thus, a ten percent “penalty” could be enforced over the former husband’s objection. Id. In Connecticut, a sharply divided court in Dougan v. Dougan, 114 Conn.App. 379, 970 A.2d 131 (2009), enforced a provision requiring the former husband to pay $750,000 (ten percent of the principal due) because he was twelve days late in making a $7.5 million payment to his former wife (he had the use of the funds for the year prior to payment being due). The lengthy majority, concurring, and dissenting opinions lay out the competing views on the topic; the concurrence noted that although “the provision at issue constitutes a penalty, ... competing public policies ... outweigh those at work in commercial cases,” thereby allowing the enforcement of penalties in marital settlement cases. Id. at 142 (Borden, J., concurring).
Given this split of authority, and having no definitive Florida precedent as a guide, it is unclear on which side of the debate between “finality of judgments” and “penalty clauses violate public policy” we should fall. While Florida courts justifiably have been very hesitant to allow collateral attacks on final judgments, they recognize a public policy exception that provides an opening to challenge invalid penalty clauses such as the onerous one here. Courts in other states that prohibit enforcement in the marital context seem more consistent with Florida’s public policy against penalty clauses. Those states that allow enforcement of penalty clauses in the marital context, but not in the commercial business context, create an anomaly: why should the law protect sophisticated businesspersons (who deal with contracts and negotiations regularly) from penalty clauses, but not marital litigants (who may have little or no business background or skills)? In addition, though not the case here, marital settlement agreements (and the final judgments that shelter them) often involve pro se litigants who have no knowledge of penalty clause jurisprudence (i.e., that penalty clauses are invalid and unenforceable). It is highly unlikely they will challenge the terms of a settlement agreement they just entered via an appeal; instead, the penalty clause issue will arise — as occurred here — only when enforcement of the clause is sought, making the availability of a collateral challenge important in this context. Given these factors and that our public policy is against, penalty clauses, their enforcement in the marital context ought to be prohibited and subject to collateral attack.
It bears emphasis that Florida law explicitly allows the use of a liquidated damages clause — if “the use of the provision does not impose a penalty on the defaulting party for noncompliance with the contract and only if the stipulated amount of the damages is reasonable.” Philip J. Pa-dovano, Florida Civil Practice § 27.7 (2012 ed.). Nothing prohibited the former spouses from agreeing to liquidated damages as part of their settlement agreement.
III. Conclusion
Summing up, I would reverse and not permit enforcement of the penalty clause. But I would not leave the former wife empty-handed. On remand the trial court would, after hearing from the parties, decide upon an appropriate amount of actual damages that is reasonable under the circumstances to compensate the former wife for the former husband’s dilatory actions *263 along with attorneys’ fees.[2]

. See Crosby Forrest Prods., Inc. v. Byers, 623 So.2d 565, 567 (Fla. 5th DCA 1993) ("A contract term which provides that a party must pay a penalty for breaching a contract is unenforceable.”).
A penalty is a sum named, which is disproportionate to the damages [sic] which could have been anticipated from breach of the contract, and which is agreed upon in order to enforce performance of the main purpose of the contract by the compulsion of this very disproportion. It is held in terro-rem over the promisor to deter him from breaking his promise.
Id. (quoting 5 Samuel Williston & Walter H.E. Jaeger, A Treatise on the Law of Contracts § 776 (3d ed. 1961)).

. Determining an appropriate amount of liquidated damages on remand is somewhat untenable; it puts the trial court in the awkward position of speculating what amount the parties might have stipulated to at the time they made their agreement before the breach, and further determining that the amount "is not grossly disproportionate to the damages that could reasonably be expected to flow from the breach.” See Padovano, supra, at § 27.7 (“Whether a stipulated amount of damages is reasonable is a matter that must be determined in light of the circumstances of the case. Because the validity of a liquidated damages clause depends in part on the reasonableness of the stipulated amount, the issue is one that must be determined by the court.”) (footnote and citations omitted).